## RIVERVIEW PROPERTIES, Inc. v. UNITED STATES.
### Civ. No. 3738.

United States District Court
M. D. Pennsylvania.
Feb. 21, 1952.

Charles H. Roemer, Paterson, N. J., Max Rosenn, Nathan Hyman, Wilkes-Barre, Pa., for the plaintiff.

Arthur A. Maguire, U. S. Atty., Scranton, Pa., for the defendant.

FOLLMER, District Judge.

This is an action for damages for injury allegedly done to property of plaintiff by an agency of the defendant. The case was tried to the Court and without a jury; and the Court, having heard and considered the evidence, finds the facts specially and separately states conclusions of law thereon as follows:

## Findings of Fact

1. The action is brought under and pursuant to the Act of June 25, 1948, c. 646, 62 Stat. 933, amended April 25, 1949, c. 92, § 2(a), 63 Stat. 62; May 24, 1949, c. 139, § 80(a, b), 63 Stat. 101; Title 28 U.S.C. § 1346.

2. The plaintiff and the defendant, acting through the United States Maritime Commission, on October 1, 1944, entered into a lease agreement by the terms of which a certain parcel of land and buildings thereon, in Loyalsock Township, Lycoming County, Pennsylvania, were leased to the defendant.

3. The leased premises comprised approximately 13 acres of land described, generally, as follows: That part of the plant of the National Dyeing and Printing Co., adjacent to Williamsport, Pennsylvania, bounded by a woven wire fence and lying between the west branch of the Susquehanna River and the right of way of the Pennsylvania Railroad.

4. The portions of the premises involved in the instant suit are

(a) Building No. 4, having a floor space of approximately 50,000 square feet, the flooring of which consisted of large flagstone and concrete slabs.

(b) Building No. 5, being 120′ x 130′, of which approximately 5,000 square feet had a flooring of wood.

(c) Part of Building No. 2, having a floor space of 300 to 500 square feet, being a passageway between buildings Nos. 4 and 5, and having a wood floor.

5. Pursuant to the terms of the lease, the United States Maritime Commission took possession of the premises on or about October 1, 1944.

6. The buildings involved had formerly been occupied as a dye plant. Throughout the plant there were a number of so-called French drains, i. e., drains which emptied directly into the ground.

7. Immediately on taking possession of the property, as a safety measure, the Government was obliged to fill up one drain and to cover all of the rest.

8. The boilers, left on the property by the owners, were, on inspection by competent engineers at the inception of the occupancy by the defendant, found to have deteriorated to the extent that they had to be taken out of operation.

9. When the old boilers were removed, the Government installed, at its own expense, a new boiler of a size and capacity sufficient to heat the office area.

10. On taking possession under the lease, and in order to make the premises safe and useable, the Government was obliged to tear up the wood portion flooring in building No. 5 and replace with concrete; replace several hundred broken windows; lay concrete floors; lay steel plate; lay 3 x 6 oak flooring over drains in building No. 4; lay and repair floor in corridor mentioned above as part of building No. 2.

11. In the making of the repairs to the floors, closing the drains, replacing windows and installing new boiler at the time of taking possession under the lease in question, the Government spent between $18,000 and $20,000.

12. The United States Maritime Commission assigned said lease agreement and surrendered possession of the said premises to the War Assets Administration, an agency of the defendant, on or about April 1, 1947.

13. The said lease provided, inter alia, as follows, to wit:

### "Article III

"There are at the present time in buildings on said premises certain processing machinery, boilers and other equipment. The Lessor will remove all of said machinery, equipment and boilers as soon as possible and in any event before December 1, 1944; except that a boiler or boilers sufficient and in good condition for heating all of the buildings on the premises shall be retained.

### "Article IV

"The Government shall have the right during the existence of this lease to make necessary repairs to the buildings on said premises including the rebuilding of floors and the repair of the roofs, to install a

heating plant for office space, to make connections with the City water main, to repair railroad trackage on said property, and if desirable construct new and additional tracks and also to do anything necessary to prepare the ground outside the buildings for outside storage space.

"Any fixtures, additions or structures placed on said premises by the Government shall remain its property and may be removed therefrom prior to the termination of this lease.

"The Government agrees that any alterations of a major character shall only be made with the written consent of the Lessor."

14. The War Assets Administration continued in possession of the premises until on or about March 31, 1948.

15. Prior to the purchase by the plaintiff in July or August, 1944, the subject property had been vacant for a number of years. The defendant was plaintiff's first tenant.

16. The plaintiff made no repairs on the subject property between the time it was purchased and the time possession was taken by the United States Maritime Commission on or about October 1, 1944.

17. All of the work done by the Government was necessary to remove hazards and to make the various portions of the occupied premises safe and tenantable.

18. The Government returned the property in as good state as that in which it obtained it, ordinary wear and tear excepted.

19. There has been strict compliance by the defendant with the terms of the lease agreement.

20. Article IV of the aforesaid lease provided that the Government should have the right, during the existence of the lease, to make necessary repairs to the buildings and premises, including the rebuilding of floors, the repair of roofs and the installation of a heating plant for office space.

21. The floors, windows and window sashes needed repairs and replacements at the time the lease was executed.

22. The buildings involved in this action were built about 1900 and have been subjected to the floods of 1936 and 1946.

23. The wooden floors involved herein were laid on sleepers or beams which rested directly on the ground and were covered by the flood waters in 1936 and 1946.

24. The poor condition of the windows and floors at the time the buildings were surrendered by the Government at the conclusion of its tenancy was due to age, dry rot, flooding, freezing, type of construction and lack of ordinary maintenance and repairs.

### Discussion

We have here a very different picture from that presented in Girard Trust Co. v. United States, 3 Cir., 161 F.2d 159, 160. There the court specifically found " * * * that by the terms of the lease the United States became obliged to make tenantable repairs * * *." In the instant case, the lease provides, inter alia, "The Government shall have the right" to make the repairs, replacements and additions enumerated. Clearly, the Government here agreed to nothing in express terms except to pay rent and hold for two years. However, here at the very beginning of the tenancy, in order to remove existing hazards and to make the premises safe and tenantable, under the permission granted in the lease, the Government spent between $18,000 and $20,000.

In United States v. Bostwick, 94 U.S. 53, 65, 24 L.Ed. 65, a case involving the leasing by the Government of a tract of land in which no formal lease was executed, but where the court held that the correspondence between the parties constituted a letting for one year, the court said, inter alia,

" * * * The United States agree to nothing in express terms, except to pay rent and hold for one year.

"But in every lease there is, unless excluded by the operation of some express covenant or agreement, an implied obligation on the part of the lessee to so use the property as not unnecessarily to injure it, or, as it is stated by Mr. Comyn, 'to treat the premises demised in such manner that

no injury be done to the inheritance, but that the estate may revert to the lessor undeteriorated by the wilful or negligent conduct of the lessee.' * * * This implied obligation is part of the contract itself, as much so as if incorporated into it by express language. It results from the relation of landlord and tenant between the parties which the contract creates. * * It is not a covenant to repair generally, but to so use the property as to avoid the necessity for repairs, as far as possible. * * *"

■ And as clearly stated in United States v. Jordan, 6 Cir., 186 F.2d 803, 806, "*, * * Even in the absence of an express covenant, * * * there is an implied obligation on the part of the lessee to treat the property leased in such manner that no injury be done to the inheritance, and to return the property to the lessor in as good condition as is received, ordinary wear and tear excepted. * * *"

■ Under all of the facts and circumstances of this case, in view of the considerable sum spent by defendant to make the premises safe and tenantable, I conclude that the defendant here returned the property in an improved condition over that in which it was received and consequently, there was a full compliance with the requirement that at the expiration of the lease the property be returned in the same state as that in which it was accepted, ordinary wear and tear excepted.

Conclusions of Law

1. This Court has jurisdiction of the parties and subject matter of this action.

■ 2. Federal law governs parties rights under a lease executed by the United States. Girard Trust Co. v. United States, supra.

3. Under the terms of the lease the only obligation of the Government was to pay the stipulated rent and at the expiration of the lease to return the property in the same state in which it accepted it, ordinary wear and tear excepted.

4. Under the facts and circumstances of the case, there was a strict compliance by the Government with the terms of the lease.

Judgment will be entered in favor of the defendant.