**AMERICAN HOUSES, Inc.**
v.
**SCHNEIDER** et al.
No. 11147.

United States Court of Appeals
Third Circuit.
Argued Dec. 10, 1953.
Decided April 8, 1954.

Earl G. Harrison, Philadelphia, Pa. (William S. Hudders, Allentown, Pa., Edward W. Mullinix, Philadelphia, Pa., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Butz, Hudders, Tallman & Rupp, Allentown, Pa., on the brief), for appellants.

Harold E. Kohn, Philadelphia, Pa. (Richardson Dilworth, William T. Coleman, Jr., Dilworth, Paxson, Kalish & Green, Philadelphia, Pa., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

The plaintiff in this case, American Houses, Inc., is a tenant in possession of a Pennsylvania industrial plant under a lease assigned to it by the United States, the original lessee. The plaintiff has invoked the equity jurisdiction of a federal district court to restrain the defendant owner and lessor, who has served it with a notice to quit, from taking any further steps to disturb its possession. The court granted the requested relief and the lessor has appealed.

The United States rented the premises from the defendants in 1943 for development and use as a war plant. In 1946 the government subleased the property to the plaintiff, and in 1950 for value assigned the entire leasehold to the plaintiff, with notice thereof to the defendant. As part of a total consideration of $125,000 the United States accepted the assignee's note for $100,000 payable in five years, and the assignment provided that this deferred payment be "secured by Assignee's Mortgage on the interest of Assignee in the Lease * * * ."

By its terms the lease was to expire "one year after the termination of the present national emergency". The instrument also gave the lessee the option of successive five year renewals to aggregate not more than fifty years. In this connection it was also provided that "notice of * * * [lessee's] desire to exercise this option shall be given the lessor * * * in writing at least thirty days prior, to the expiration of the * * * term."

On April 10, 1953, the lessor sent the lessee a notice to quit asserting that the primary term of the lease would expire at the end of that month. On April 16, the lessee replied denying that the term was about to end, but in any event giving notice that it wished to renew for five years. One disputed matter in the controversy thus precipitated is the time of "the termination of the present national emergency" upon which the expiration of the primary term depends. There is also the question whether the circumstances are such that equity should intervene to relieve the tenant of the agreed thirty days notice of its intention to renew.

Approaching these questions we must first decide what law is applicable to their solution. The plaintiff's pleadings and proof were such as to bring this case within federal diversity jurisdiction. But beyond that, this is a dispute about the construction of a lease executed by the United States in exercise of war powers, and the equitable enforcement of rights derived from that instrument. Therefore, we apply the specific holding of this court that " * * the decisions of the Supreme Court in Clearfield Trust Co. v. United States, 318 U.S. 363, 366–367, 63 S.Ct. 573, 87 L.Ed. 838, and United States v. Allegheny County, 322 U.S. 174, 182–183, 64 S.Ct. 908, 88 L.Ed. 1209, require the

conclusion that the federal law governs the rights of the parties under a lease executed by the United States." Girard Trust Co. v. United States, 3 Cir., 1945, 149 F.2d 872, 874; cf. United States v. Le Roy Dyal Co., 3 Cir., 1950, 186 F.2d 460. For comprehensive discussion of the jurisdictional problem, see Note, 59 Harv.L.Rev. 966; Note, 53 Col.L.Rev. 991. It is true that the United States was a party in the Girard Trust case. In the present case the United States, as authorized by federal statutes, has assigned its lease to plaintiffs, retaining a security interest in the assigned term until the consideration shall be fully paid. We think this assignment should not and does not change the law applicable to the construction of the basic lease or the judicial technique by which it is determined whether equity shall give effect to an attempted renewal challenged as falling short of literal compliance with the terms of the lease. This conclusion is the clearer here because this adjudication as to the survival of the leasehold necessarily determines whether the government's security interest in the lease shall survive. Cf. United States v. County of Allegheny, 1944, 322 U.S. 174, 183, 187, 64 S.Ct. 908, 88 L.Ed. 1209, distinguishing City of New Brunswick v. United States, 1928, 276 U.S. 547, 556, 48 S.Ct. 371, 72 L.Ed. 693. Matters thus related to an undertaking of the United States and its persisting rights in that connection are to be adjudicated according to the federal courts' understanding of legal and equitable principles and redressed in a way which the federal courts find appropriate and within their competence. A federal court proceeds to such adjudication without obligation of deference to the landlord and tenant law of any state or to any limitations which a state may impose on its courts in affording a remedy when similar matters regulated by state law are litigated in local courts. Accordingly, we examine the merits of this case guided by state rules and precedents only in so far as in professional judgment we may be persuaded that they are sound.

Where a lease gives the lessee a privilege of renewal which may be exercised by notice to the lessor at or before a specified time it may happen that the notice is tardy and the lessor refuses to honor it. Rather frequently a lessee in this position will ask a court of equity to relieve him of the strict letter of his bargain, arguing on the one hand that the failure to receive notice on or before the due date did not cause the landlord to change his position, and on the other that loss of the contemplated renewal would work a great and irreparable hardship upon the lessee. It is rather generally considered within the province of equity to consider such claims, and in real hardship cases to allow a renewal despite slight, relatively inconsequential and excusable tardiness. Galvin v. Simons, 1942, 128 Conn. 616, 25 A.2d 64; Marjer v. Layfmen, 1947, 140 N.J.Eq. 68, 53 A.2d 187; Dugan v. Haige, Fla.1951, 54 So.2d 201; cf. White v. Long, 1927, 289 Pa. 525, 137 A. 673. We believe this is sound and salutary equity doctrine and practice. It merits acceptance and application by the courts of the United States in cases arising under leases which are primarily of federal concern. Therefore, in this case we examine the equities to see whether we agree with the district court that it is fair to direct that the tenant be accorded the benefit of a renewal of its lease without strict compliance with the agreed condition as to notice.

The first relevant consideration is that the delay in giving notice resulted from a not unreasonable mistake and misunderstanding on the lessee's part as to the time of termination of the lease. The lease provided that the primary term expire one year after the occurrence of an uncertain future event, namely, "the termination of the present national emergency". It is not disputed that at no time since the execution of the lease in 1943 has there ceased to exist in the United States a state of "national emergency" formally declared and recognized by competent national authority. Has this last decade covered

successive and to some extent overlapping national emergencies or is that which the 1943 lease described as "the present national emergency" to be viewed as itself continuing through various ensuing phases of "hot" and "cold" international controversy even to this day? In any event, plaintiff argues, the 1943 emergency continued in one sense until the Senate ratified a Peace Contract with Western Germany on July 1, 1952, less than a year before the notice of renewal. Without restating the reasoning which led the district court to reject this analysis, we are satisfied that the court correctly concluded that the "present national emergency" described in the lease is to be treated as expiring on April 29, 1952 by virtue of Presidential Proclamation No. 2974, issued the preceding day. But that conclusion was not so clear as to have been beyond any reasonable legal disputation much less so obvious as to have been apparent to any intelligent person who might have learned of the particular proclamation. Plaintiff has insisted throughout this controversy that the "national emergency" contemplated by the lease has not yet ended. And while we rule against that contention we cannot regard it as either pretense or folly. Moreover, the lessor himself, wittingly or unwittingly, acted in such manner as to avoid conveying to the lessee any contrary suggestion until in the lessor's view the time for renewal had passed. Late in March 1953, just eleven months after the effective date of the April 1952 Presidential Proclamation, the lessor billed the lessee routinely in advance for rent for the month ending May 1, 1953, with no suggestion of the expiration of the term, and received and accepted payment in regular course. Yet only a few days later, on April 10, 1953, the lessor wrote the lessee stating that the term would expire on April 30 and giving notice to quit. The lessee replied promptly challenging the claim but giving notice of its desire and intention to renew the lease. These facts considered, no such fault can be attributed to the lessee for his mistaken view of the situation as should influence a court of equity to hold him to the letter of his bargain if real hardship is involved. Actually, the lessee here appears in more favorable light than the lessee in the most frequently cited case of this type, who had forgotten to send timely notice. F. B. Fountain Co. v. Stein, 1922, 97 Conn. 619, 118 A. 47, 27 A.L.R. 976 with annotation.

And this is a genuine hardship case. In addition to the reserved rent payable to the lessor, the lessee is paying the United States the substantial sum of $125,000 for the assignment of the leasehold interest. Since the 1950 assignment the lessee has made substantial improvements. The unexpected notice to quit came while the lessee was using the premises for the manufacture of prefabricated houses. The unanticipated removal of the enterprise as demanded by the landlord would itself have been expensive and would have entailed a business loss. All told the district court found, we think reasonably, non-recoverable investment and expenditures of the plaintiff, which would have exceeded $250,000 if it had been forced to surrender the premises in strict compliance with the terms of the lease.

On the other hand, the lessor did not change his position in the interval of about two weeks between the time when technically notice should have been given and the time it was given. The lessor seeks to counter this fact by urging that the lease was a hard bargain from the outset, involving a very low rental which the lessor accepted under governmental pressure. We find nothing in the record to show that the agreed rent, $19,890 a year, was unconscionably low or that it failed to provide a fair return on the value of the property and the owner's investment in it. It may well be that a considerably larger rent could have been obtained in a 1953 negotiation of a new contract based upon the value of the property as improved by the United States and the plaintiff. Indeed, the incorporation of that very suggestion in the notice to quit seems to in-

dicate that the lessor had in mind a continuation of the tenant's possession at a higher rent rather than any change in use or possession. In any event, it seems to us that the landlord, quite understandably seeking a new and better bargain, has not shown that the original bargain was onerous or oppressive.

The district court also gave weight to the fact that the lessee had contracted to complete payment to the United States for the assignment over a five year period beginning in 1950, and in that connection had covenanted with the United States to protect the government's position as creditor by keeping the lease in force through any renewal which might become necessary during that period. It is true that on this record the lessor had no actual knowledge of this provision of the assignment. However, he was formally notified of the fact of the assignment and of its recording in the local land records. In these circumstances, we think the lessor can not properly complain when a court takes into account that a public interest will be served by a renewal of the lease.

On the whole case we conclude that the equities of the situation so strongly favor the lessee that the district court was fully justified in treating the tardy notice of renewal as effective and in restraining the lessor from disturbing the lessee's possession.

The lessor makes one additional argument against the granting of injunctive relief. It is said that by restraining the lessor from ousting the lessee, the district court has improperly enjoined the prosecution of a state suit to regain possession of the premises and thus has violated Section 2283 of the Judicial Code. 28 U.S.C.1952 ed. § 2283. This section is in terms and effect a restraint upon the power of a federal court to "grant an injunction to stay proceedings in a State court" in certain situations. Whether this is potentially such a situation we need not decide. For a reasonable and we think correct construction of the quoted language restricts its application to cases where "proceedings in a State court" have commenced before the federal adjudication. Western Fruit Growers, Inc., v. United States, 9 Cir.. 1941, 124 F.2d 381. Otherwise, a federal court could never effectively enjoin a defendant in any matter within the concurrent jurisdiction of national and state courts. To surmount this difficulty the lessor here argues that before the commencement of this federal suit he had begun the formal procedure prescribed by Pennsylvania Landlord and Tenant Act of 1951, P.L. 69, 68 P.S. § 250.101 et seq. for recovery of possession of real property. That act provides for a written notice to quit which must be given in prescribed form before a formal eviction complaint can be filed before a local magistrate. And there is no doubt this first step in the eviction procedure, the statutory notice from landlord to tenant, had been taken here before the tenant asked the federal court to intervene. But this is not enough. For even on the lessor's theory of a two stage statutory procedure, it is only the second stage which involves resort to a judicial tribunal. Not having reached that court stage of the state procedure the landlord cannot invoke the prohibition of Section 2283 against federal interference with "proceedings in a State court".

The judgment will be affirmed.