UNITED STATES of America

v.

Lee MORGAN and Peter F. Spagnuolo, Jointly and Severally.

Civ. A. No. 10799.

United States District Court
D. Maryland.

Aug. 1, 1961.

Leon H. A. Pierson, U. S. Atty., and John Gordon Underwood, Asst. U. S. Atty., Baltimore, Md., for the Government.

Russell Hardy, Sr., and Russell Hardy, Jr., Kenwood, Md., for defendants.

R. DORSEY WATKINS, District Judge.

The United States as lessor of fifteen premises located in Southwest Washington, D. C., containing thirty-one apartment units to be used for residential purposes, has brought suit against the defendants jointly and severally to recover $335.60 allegedly due as rent. Defendants have filed an answer denying all of the allegations of the complaint, setting up the statute of limitations as a bar to recovery and have counterclaimed for the return to them of the sum of $62.-70. The United States as moved for summary judgment on its complaint and defendants have moved for summary judgment in their favor on the complaint and on their counterclaim.

The first question presented to the court for consideration is whether or not the Government's claim is barred by limitations. Chief Judge Thomsen of this court had occasion in United States v. Fidelity-Baltimore National Bank & Trust Company, D.C.D.Md.1959, 173 F. Supp. 565, 567–568 to review extensively the cases supporting the general doctrine that the United States is not bound by limitations, and the few exceptions to that general rule. Here as in that case the United States contends that it is suing as a sovereign to enforce a public right or assert a public interest and thus is not barred by limitations. On the other hand, the defendants take the position that the United States in the leasing of the property involved entered into an ordinary commercial transaction, abandoning any sovereign immunity, and thereby coming within the "business relations" exception to the general rule. It, therefore, becomes necessary to examine by what authority the premises were acquired, by what authority they were leased, and the nature of the transaction as characterized by the terms and provisions of the lease itself.

The lease recites that it was entered into between the defendants and the "United States of America, acting by and through the Director of Real Property Acquisition and Utilization Division,

Public Buildings Service, General Services Administration (hereinafter called the 'Government'), under and pursuant to the authority contained in Public Law 152, 81st Congress, approved June 30, 1949, as amended," (63 Stat. 380). The leased premises in the instant case were originally acquired under an Act passed by Congress to provide, inter alia, for the acquisition of land in the District of Columbia for the construction of public buildings (44 Stat. 630–635) 40 U.S.C.A. § 341 et seq. Pursuant to this statute the Secretary of the Treasury was authorized and directed to acquire by purchase, condemnation, or otherwise, suitable sites for Federal buildings. Section 5 of the Act provided that in case a site acquired under the Act contained a building, the Secretary of the Treasury was authorized to rent such building until its removal (44 Stat. 634). Thereafter, the functions of the Secretary of the Treasury were transferred to the Federal Works Administrator under 1939 Reorganization Plan No. I (See annotations to section 133t of Title 5 U.S.C.A., Part 3 of Plan No. I, section 303, Public Buildings Administration). In 1949 all functions of the Federal Works Agency were transferred to the Administrator of General Services (63 Stat. 380, section 103 (a); Title 5 U.S.C.A. § 630b). He was accordingly authorized, in his discretion, to rent sites previously acquired until they were needed for construction purposes. Thus, as a tracing of the statutory authority reveals and as recited by the lease at the time of the execution of the lease herein involved, the leased premises were under the authority and control of the General Services Administration.

The lease itself contains certain provisions not found in the ordinary commercial lease. For example, all records of the lessees relating to the operation of the properties were to be made available for inspection by authorized representatives of the Government at all reasonable times. The Government reserved the right to enter the leased premises at any reasonable time for the purpose of inspecting the buildings. The lessees warranted that the rentals to be charged by them in subletting the apartments should not exceed the ceiling prices established by the Office of Rent Control in the District of Columbia and that they would furnish each subtenant with the services and supplies required by the Office of Rent Control. The Government reserved the right to enter upon the properties at any time for the purpose of investigating the sub-surface in connection with the preparation of plans and specifications for any proposed Federal Development. Right was reserved by the Government to permit prospective bidders for the work of constructing any proposed Federal Development to enter and make such investigations of subsoil conditions as might be necessary. All material determined pursuant to section 5(b) (1) of the Atomic Energy Act of 1946 (60 Stat. 761) to be essential to the production of fissionable material was reserved "for the use of the United States", with a right in the Government to enter at any time to prospect for and remove said material. It was provided further that all disputes concerning questions of fact arising under the lease should be determined by the Commissioner of Public Buildings Service, General Services Administration, subject to appeal by the lessees to the Administrator of General Services, whose decision was to be final and conclusive upon the parties. The lessees agreed not to discriminate against any applicant for employment in connection with the performance of work under the lease because of race, creed, color, or national origin and to require their subcontractors to make similar covenants against discrimination in their subcontracts.

■ As the land and buildings in question were acquired, pursuant to statutory authority, for federal purposes and were leased as authorized by statute and on terms and conditions protecting the public interest, it can only be concluded that in suing to recover rent allegedly due to the Government, the United States is acting in its sovereign capacity and *is*

not bound by any statute of limitations. A case closely similar aptly stated the law as follows:

" * * * It would indeed appear from the venerable and respectable dicta cited, and from the stated grounds of the decisions, that the United States might, in the holding and disposition of property, 'come down from its position of sovereignty' and thus be subject to a state time limitation. But not a single case has been cited or found in which the United States has been held barred by a state statute of limitations because the Government had abandoned its sovereign capacity. In this connection, at least, the reason may be that 'The United States do not and cannot hold property, as a monarch may, for private or personal purposes.' Van Brocklin v. State of Tennessee, 117 U.S. 151, 158, 6 S.Ct. 670, 674, 29 L.Ed. 845. Or as put more recently 'Every acquisition, holding, or disposition of property by the Federal Government depends upon proper exercise of a constitutional grant of power.' United States v. Allegheny County, 322 U.S. 174, 182, 64 S.Ct. 908, 913, 88 L.Ed. 1209.

"Whatever the answer to that problem is, the Government was not, in this case, a 'mere' lessor of real estate. The lease was executed pursuant to statutory authority, 41 Stat. 129, 10 U.S.C. § 1263, 10 U.S.C.A. § 1263. 'The right to dispose of property by the United States which is no longer needed, is an essential governmental function in the economic management of governmental affairs, and is recognized by Sec. 3, cl. 2 of Art. 4 of the Constitution * * *.' City of Springfield v. United States, 1 Cir., 99 F.2d 860, 863. The cited clause authorizes leasing as well as selling of Government property. United States v. Gratiot, 14 Pet. 526, 10 L.Ed. 573. Even when the United States is party to an ordinary commercial

lease, it exercises a governmental function. Girard Trust Co. v. United States, 3 Cir., 161 F.2d 159. But it is evident from some of the terms of the lease in question that it is not an ordinary commercial contract. For example the Army maintained the right to bar the employment of any labor considered by the Commanding Officer to be objectionable, and all questions under the lease were to be settled by the Commanding Officer or on appeal to the Secretary of War. Thus, whether or not the United States can, as a property holder and lessor, abandon its sovereign position, it has not done so in this case. The United States, therefore, remains immune from the time bar of the New York statute of limitations." United States v. Thomson, D.C.S.D.N.Y.1953, 114 F.Supp. 874, 876–877.

Accordingly, the court holds that the Government's claim is not barred by limitations.

■ The second question for consideration is whether or not this is an appropriate case for summary judgment. The defendants' answer by denying all allegations of the complaint might seem on its face to raise an issue of fact. However, defendants in their motion for summary judgment allege there is no genuine issue as to any material fact and that the case may be decided as a matter of law. Having examined all of the pleadings and the exhibits attached thereto including plaintiff's certified copy of a Certificate of Indebtedness and the affidavit of Lee Morgan in support of the defendants' motion for summary judgment, the court is satisfied that summary judgment may properly be granted in the instant case.

■ The undisputed facts of the case are that on April 1, 1952, defendants leased from plaintiff fifteen separate houses in Washington, D. C. for a term of five years. Each house was at that time occupied as a dwelling. Defendants continued the use of the premises as dwell-

ings under sublease agreements with the various persons in occupancy. On November 10, 1954 the Government elected to terminate the lease as of June 1, 1955. Thereafter, defendants notified their sublessees in possession of the Government's election to terminate by giving thirty days' written notice, which notice provided:

"Since April 1953 we have been operating 31 apartments under contract with the General Services Administration. Your apartment is one of these units.

"We have been given notice by the General Services Administration that our contract with them is terminated effective May 31, 1955. We have been informed that it is their plan to offer these properties in public advertised bidding.

"Since we will no longer be your landlord after May 31, we must give you notice that your lease with us is also terminated effective May 31, 1955".

The termination provision of the lease between the Government and defendants reads as follows:

"The lease may be terminated at any time by either of the parties upon six months' written notice to the other party. *The Lessees shall,* on or before the date of termination of the lease, *cause the buildings to be completely vacated, unless the Government waives, in writing, this requirement.* * * *" (Emphasis supplied.)

On May 31, 1955 only four of the fifteen buildings had been vacated. It was not until June 30, 1955, that the remaining eleven buildings were completely vacated. On July 14, 1955, the Government notified defendants that it was holding them responsible for rent for the month of June as holdovers, tenants at sufferance. The Certificate of Indebtedness states in part:

"You failed to vacate the premises by June 1, 1955, and accordingly became a holdover for the month of June 1955, at the monthly rate of $398.30. Also, you failed to pay rental for the period May 1 to 30 [sic], 1955, in the sum of $398.30, resulting in a total rental charge due in the amount of $796.60. Against this debt there has been applied the sum of $461.00 deposited by you and retained by the Government as a guarantee of performance of terms and conditions of the lease agreement, leaving a balance due of $335.-60."

"The substantive law to be applied when the facts are found * * * is not that of" the District of Columbia. The "decisions of the Supreme Court in Clearfield Trust Co. v. United States, 318 U.S. 363, 366–367, 63 S.Ct. 573, 87 L.Ed. 838, and United States v. Allegheny County, 322 U.S. 174, 182–183, 64 S.Ct. 908, 88 L.Ed. 1209, require the conclusion that the federal law governs the rights of the parties under a lease executed by the United States. In the absence of federal cases in point the court below may turn for guidance to the general law of landlord and tenant." Girard Trust Company v. United States, 3 Cir., 1945, 149 F.2d 872, 874; see also: Girard Trust Company v. United States, 3 Cir., 1947, 161 F.2d 159, 161; American Houses, Inc. v. Schneider, 3 Cir., 1954, 211 F.2d 881, 882–883, 44 A.L.R.2d 1352; Riverview Properties, Inc. v. United States, D.C. M.D.Pa.1952, 102 F.Supp. 934, 937; Patton v. United States, D.C.W.D.Pa.1955, 139 F.Supp. 279, 283.

Tiffany in his two volume treatise on landlord and tenant sets out the general law applicable to "the liability of the tenant to the landlord in case he holds over without the landlord's assent, and the landlord does not assert that a new tenancy has been created.

"There is at common law no liability for rent on the part of a tenant wrongfully holding over, a tenant at sufferance. This, it has been said, is 'because it was the folly of the owners to suffer them to continue in possession after the determination of the preceding estate,[116] [116. Finch's Case, 2 Leon 143; 1

Cruise's Dig., tit. 9, c. 2, sec. 5.]' but a more satisfactory reason is that an obligation to pay rent is the result of a contract or reservation, and there is ordinarily no contract to pay rent after the term, nor a reservation of rent then to accrue. It is only by means of a new agreement between the landlord and the tenant, in effect a renewal of the lease, or by means of the application of the doctrine, before referred to, of the landlord's option, as against the tenant wrongfully holding over, to assert a renewal of the tenancy, that the tenant can be subjected to liability as for rent accruing after the expiration of the original term.

"It has been decided in a number of cases that a tenant holding over without permission is liable in assumpsit for use and occupation for such period as he so holds over, * * *. Such a liability has been imposed when the tenant himself was not in possession, but the holding over was by a subtenant without the tenant's consent, * * *."

" * * * In such an action the tenant is liable for the reasonable value of the use and occupation of the premises, and, while presumably this would be regarded as *prima facie* equal to the rent reserved by the lease, in the absence of evidence to the contrary, it may be either more or less, as may appear proper on the evidence." Tiffany, Landlord and Tenant, Volume 2, § 211, pp. 1491–1492, 1493, 1494.

■ Moreover, if "the tenant fails to relinquish possession at the end of the term, or his subtenant fails to do so, he is liable to the landlord in damages for the resulting injury to the latter. Thus it has been held that the landlord may recover for the loss of an opportunity to let to another, and likewise the expense of a suit to recover possession. But usually the *damages sought and allowed are* the value of the land for use or rental for the time during which the landlord was kept out of possession, the action for damages being thus in effect one for mesne profits. It seems to be immaterial, for most purposes, whether the landlord brings an action of tort for damages from holding over, or an action for use and occupation, which, as stated in the preceding section, he has the right to bring." Tiffany, Landlord and Tenant, § 212, p. 1495.

■ The defendants cannot now be heard to complain that they could not have "caused" the buildings to be completely vacated by May 31, 1955. This they expressly warranted to do. In the "notice to quit" given by defendants to their subtenants nowhere are the subtenants specifically instructed that they must *vacate the premises* by May 31, 1955. Moreover, if thirty days written notice to quit had been served upon the sublessees as of April 1, rather than as of May 1, terminating their subleases as of April 30, 1955, defendants could have filed complaints for possession of real estate against their subtenants holding over after April 30, thereby assuring compliance with defendants' agreement to have all premises completely vacated by the time that defendants' lease terminated on May 31. Nor is the fact that four of the fifteen premises had been vacated a defense to this action. "The duty to relinquish possession applies to the whole premises, and if the tenant fails to relinquish any part he is regarded as 'holding over' as to all." Tiffany, Landlord and Tenant, Volume 2, § 206, p. 1467. That defendants should be liable for one month's rent and that the Government chose to require one month's rent is both equitable and reasonable. The Government apparently could have elected to consider defendants by holding over as tenants at sufferance for an entire additional year. Instead the Government, if it asserted any new tenancy was created, chose to follow the suggestion made by Tiffany "[t]hat is, that a tenant under a lease at an annual rent should be liable as tenant for another year, while a tenant under a lease at a monthly rent should be liable as tenant for another month. The courts have, however, asserted no such rule, and it would have in its favor merely the consideration of convenience and exactitude." Landlord and Tenant, Volume 2, sec. 209, p. 1479.

The court concludes as a matter of law that as defendants were tenants holding over without permission, they are liable to the Government for a sum equal to one month's rent either for use and occupancy or for damages in tort. Accordingly, summary judgment is hereby entered in favor of the plaintiff in the principal sum of $335.60, plus the costs of this action. Summary judgment in favor of the defendants on their counterclaim is hereby denied.