# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3308
_____

Commercial Resource Group, LLC

*Plaintiff - Appellant*

v.

The J.M. Smucker Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: October 23, 2013
Filed: May 30, 2014 (Corrected: 06/25/2014)

_____

Before RILEY, Chief Judge, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

J.M. Smucker Co. ("Smucker") leased a commercial building from Commercial Resource Group ("CRG"). The lease provided that, after its initial term, it would automatically renew unless Smucker provided written notice of its intent to terminate the lease 180 days prior to the end of the current term. Smucker sent a termination notice to CRG that arrived after the deadline. CRG refused to accept the notice and filed suit in federal court based on diversity jurisdiction to recover rent for the

additional term. The district court found that because Smucker had substantially performed its lease obligations, it would be unconscionable to hold Smucker to the renewal. CRG appeals. With jurisdiction under 28 U.S.C. § 1291, we reverse.

## I. Background

In March 2001, Smucker leased a commercial building in West Fargo, North Dakota, from CRG. The parties negotiated an amendment to the lease in 2005. The amendment provided that the lease would continue for an initial two-year term, and it gave Smucker an option to renew the lease for up to four additional one-year terms. After the initial term, the lease was set to renew automatically on July 1st of each year unless Smucker provided CRG written notice of its intent to terminate 180 days prior, i.e., by January 1st. The original lease specified the address to which the written notice should be sent ("original address"). On September 15, 2006, CRG's management company informed Smucker of CRG's change of address and notified Smucker that "all future rent payments and lease correspondence" should be sent to the new address ("2006 address"). Smucker received this notice and began sending rent payments to the new address. The lease was not modified to reflect the change of address.

In late 2009, Smucker decided to close down its West Fargo facility. On December 22, 2009, Smucker sent a notice of termination to CRG by way of Federal Express ("FedEx"); however, Smucker sent the notice to the original address instead of the 2006 address. On December 23, 2009, Smucker received an email from FedEx stating "FedEx attempted, but was unable to complete delivery [of the December 22, 2009, notice]." FedEx "[r]ecommended" that Smucker "[c]ontact [FedEx] to provide correct delivery address and/or additional delivery information." Smucker took no action. FedEx sent a second email a week later, on December 30, 2009. The second email stated, "FedEx attempted, but was unable to complete delivery." This email instructed that "[n]o action is required" because "[t]he package is being returned to

the shipper." Smucker took no additional action prior to the January 1st deadline for terminating the lease.

After the deadline passed, Smucker sent a second termination notice to CRG, this time to the 2006 address. The notice was dated January 4, 2010, and it arrived on January 5, 2010. This second notice stated Smucker wanted to terminate the lease. It also explained that Smucker had sent a timely termination notice to the original address, but that notice had been returned "as undeliverable." The parties disagree as to whether this second notice effectively terminated the lease.

The district court found that Smucker had substantially performed the contract and should not be held responsible for a "minor delay" that was the result of "an honest mistake in mailing." The court emphasized that Smucker "made a good faith attempt" and "acted promptly to correct [its mistake]." As such, the district court held that "[t]o punish Smucker in the form of hundreds of thousands of dollars . . . would be an unconscionable result . . . especially where time was not of the essence to the contract and where the untimely notice did not result in any demonstrable injury to CRG." Therefore, the district court granted Smucker summary judgment on the basis of substantial performance.

## II. Discussion

We review the district court's grant of summary judgment de novo, giving the "nonmoving party the benefit of all relevant inferences." Nelson v. Corr. Med. Servs., 583 F.3d 522, 527 (8th Cir. 2009) (en banc) (quotation omitted). The parties agree that the lease was to renew automatically unless Smucker provided written notice to CRG of its intent to terminate the lease by January 1, 2010. There is also no dispute that Smucker's notice failed to arrive by that date. Rather, at issue in this case is whether the district court erred by: (1) failing to treat the lease cancellation

provision as an option to terminate; and (2) allowing Smucker equitable relief despite failure to strictly comply with the terms of the option.

## A. Option to Terminate the Lease

The district court treated the lease cancellation provision as a standard contract provision and found that: (1) Smucker had substantially performed its obligations under the lease; and (2) time was not of the essence to the lease. CRG claims the lease cancellation provision was an option to terminate the lease and as such required strict compliance, including strict compliance with the time provisions.

As a case brought under diversity jurisdiction, the district court applied North Dakota law.[1] See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 417 (2010) (Stevens, J., concurring) ("It is a long-recognized principle that federal courts sitting in diversity apply state substantive law . . . ." (quotation omitted)). Under North Dakota law, a lease is a contract between two parties, and "[t]he rules of contract construction are . . . applied to leases." Langer v. Bartholomay, 745 N.W.2d 649, 655 (N.D. 2008); Kolling v. Goodyear Tire & Rubber Co., 272 N.W.2d 54, 60 (N.D. 1978) ("[T]he rules of construction relating to contracts generally apply to the construction of leases."). As with other contracts, "[w]hether or not a [lease] requires performance at the exact time specified in the [lease] depends on whether or not time is of the essence." Langer, 745 N.W.2d at 657. "[U]nless the intent that time is of the essence is manifest from the face of the [lease], whether the parties intended time to be of the essence is a question of fact." Id. "Where time is not of the essence, [i.e., is non-material,] a reasonable delay in performance does not constitute a breach of contract." Id. Instead, under the doctrine of "substantial performance," a party is relieved of exact compliance with the terms

---

[1]We note the lease also contains a specific choice-of-law provision in which the parties chose North Dakota law to govern this dispute.

of a lease if the breach of the lease terms is non-material.  See VND, LLC v. Leevers Foods, Inc., 672 N.W.2d 445, 449, 453 (N.D. 2003) (citing Restatement (Second) of Contracts § 241 (1977) and Kolling, 272 N.W.2d at 60); see also Restatement (Second) of Contracts §§ 241 & cmt. b, 237 & cmt. d.  In this case, the district court held that time was not of the essence to the contract, and therefore Smucker's slight delay was not a material breach.

However, option contracts are treated differently than regular contracts. Langer, 745 N.W.2d at 657.  An option is an irrevocable offer by the offeror to perform.  Matrix Props. Corp. v. TAG Invs., 609 N.W.2d 737, 742 (N.D. 2000).  See generally Restatement (Second) of Contracts § 25.  "Courts generally construe the attempt to exercise an option strictly and require exact compliance because the optionee is free to exercise the option if he chooses, but an optionor is bound to perform if the option is properly exercised."  Langer, 745 N.W.2d at 657–58.  "As a matter of law . . . time [is] of the essence" in exercising an option contract.  Id. at 658. "[T]he optionee must perform the terms of the option within the specified time and upon the terms and conditions provided in the agreement."  Id. at 657.  North Dakota applies the same rules to an option in a lease as to an option to buy property, whether for an option to renew a lease or an option to terminate.  Id. at 657–58.

The lease in this case contained an option to terminate, not simply a lease cancellation provision.  While the original lease provided an option to renew the lease for up to three years, the amendment to the lease made renewal automatic and termination optional.  The amendment reads:

> [T]his Commercial lease shall be automatically extended for four (4) successive one-year periods, unless Tenant delivers written notice to Landlord of Tenant's intention to not extend the term for said additional period, said notice to be delivered no later than 180 days prior to the expiration of an option term.

Through the provision for automatic extensions, CRG, the lessor, made an irrevocable offer to extend the lease and no longer had the ability to terminate the lease at the end of the current term—the lease would automatically renew based solely on the actions of the lessee, Smucker. The lease could only be cancelled by Smucker, and only if Smucker provided written notice to CRG by a specified date. As a result, after the amendment, Smucker held an option to terminate the lease.

As an option to terminate the lease, the cancellation provision must be "strictly construed" and "require[s] exact compliance." Langer, 745 N.W.2d at 658. Also, "as a matter of law . . . time [is] of the essence" to the option. Id. Given the significant differences between a standard lease cancellation provision and an option to terminate, we find the district court erred in failing to treat the cancellation provision in this case as an option to terminate.

## B. Equitable Relief

In finding that Smucker had substantially performed its contract, the district court essentially found all the factors relevant to equitable relief for failure to timely exercise an option. CRG argues that these findings were in error and that equitable relief should not be granted in this case. In particular, CRG asserts that holding Smucker to the lease for another year is not unconscionable.

The Supreme Court of North Dakota has twice suggested the possibility that equitable relief may be available when a party fails to timely exercise an option. See Langer, 745 N.W.2d at 658–59; Western Tire, Inc. v. Skrede, 307 N.W.2d 558, 562–63 (N.D. 1981)). In Langer, the court recognized that "some courts have invoked their equitable powers and allowed an option to be exercised when the requirements for the option have not been met." 745 N.W.2d at 658. Generally, "[a] court may invoke its equitable powers and an option may nevertheless be enforced even if the holder failed to exercise it within the specified time if: (1) the delay is

slight[;] (2) the delay has not prejudiced the other party[;] and (3) a failure to grant relief would result in such hardship as to make literal enforcement of the option unconscionable." Id. The Supreme Court of North Dakota has also noted, however, that courts generally limit equitable relief to a very particular situation: "[e]quitable relief is generally granted in cases where a lessee has made valuable improvements to the property in expectation of renewing a lease, but the lessee's notice to renew is slightly past the deadline, and the relief is necessary to avoid the inequitable forfeiture or literal compliance is unconscionable." Id. at 658–59.

While the district court in this case did not explicitly grant equitable relief, relying instead on the theory of substantial performance, the district court essentially applied the equitable relief test outlined in Langer. The district court found that "[u]pon discovery of the mistake, Smucker acted promptly to correct it, which caused the notice to arrive shortly after the deadline specified in the contract." The district court also held that "[t]o punish Smucker in the form of hundreds of thousands of dollars . . . would be an unconscionable result . . . especially . . . where the untimely notice did not result in any demonstrable injury to CRG." Thus, the district court found that (1) the delay was slight (the notice arrived "shortly after"); (2) the delay did not prejudice CRG (no "demonstrable injury"); and (3) enforcement of the lease would be unconscionable ("would be an unconscionable result").

Assuming without deciding that equitable relief is an available remedy in this case, we find there is no showing of unconscionability upon enforcement of the lease.[2]  In North Dakota, "[t]he determination whether a particular contractual

---

[2]It is an open question whether North Dakota would allow equitable relief in a case such as this. See Langer, 745 N.W.2d at 658–59 (discussing the possibility of equitable relief); Western Tire, 307 N.W.2d at 562–63 (denying equitable relief). It is also an open question whether North Dakota would require a showing of both procedural and substantive unconscionability in this context. See, e.g., Rutherford v. BNSF Ry. Co., 765 N.W.2d 705, 713–15 (N.D. 2009) (requiring a showing of both

provision is unconscionable is a question of law for the court." Strand v. U.S. Bank Nat'l Ass'n ND, 693 N.W.2d 918, 921 (N.D. 2005). We conclude, as a matter of law, that the harm suffered by Smucker is not so great as to rise to the level of substantive unconscionability. There is no evidence that Smucker was at risk of losing anything other than one year's rent if the lease were enforced. See Langer, 745 N.W.2d at 658. In addition, there has been no showing that payment of one year's rent, in and of itself, constitutes a forfeiture or otherwise unconscionable result. Indeed, in exchange for the rent paid, Smucker received the lease to, and thus the use of, the building for an additional year. On this record, there is insufficient evidence to conclude as a matter of law that enforcing the terms of the lease against Smucker will cause Smucker "such hardship as to make literal enforcement of the option unconscionable." Id.

### III. Conclusion

For the reasons above, we reverse the district court's order granting summary judgment to Smucker and remand for further proceedings consistent with this opinion.

COLLOTON, Circuit Judge, dissenting.

The question presented on this appeal is whether The J.M. Smucker Company is entitled to equitable relief from strict enforcement of a lease with Commercial Resource Group, LLC on a commercial building in West Fargo, North Dakota. Smucker intended to terminate the lease on June 30, 2010, but due to what the district

---

procedural and substantive unconscionability at the time the lease was entered). Because we find the lease is not substantively unconscionable, we need not consider whether it is procedurally unconscionable.

court described as "an honest mistake in mailing," Smucker's notice to terminate arrived four days after the January 1 deadline set by the lease. Applying North Dakota law, the district court granted equitable relief, observing that the notice arrived shortly after the deadline, Commercial Resource Group suffered no demonstrable injury from the slight delay, and an order requiring Smucker to pay hundreds of thousands of dollars in back rent and utilities would be an unconscionable result. The district court's equitable ruling accords with North Dakota law and should be affirmed.

We know that North Dakota is likely to allow equitable relief from option contracts in appropriate cases, because the state supreme court said so in two decisions. In *Western Tire, Inc. v. Skrede*, 307 N.W.2d 558 (N.D. 1981), the court observed that decisions from other jurisdictions have granted equitable relief to parties who failed timely to exercise an option to renew a lease, where "the delay is slight, the delay has not prejudiced the landlord, and the failure to grant relief would result in such hardship to the tenant as to make literal enforcement of the renewal provision unconscionable." *Id.* at 562 (citing *Fletcher v. Frisbee*, 404 A.2d 1106 (N.H. 1979); L.S. Tellier, Annotation, *Effect of Lessee's Failure or Delay in Giving Notice Within Specified Time, of Intention to Renew Lease*, 44 A.L.R.2d 1359 (1955)). The court in *Western Tire* rejected a lessee's claim and distinguished authorities granting relief, but gave no indication that equitable relief is categorically unavailable in North Dakota.

In *Langer v. Bartholomay*, 745 N.W.2d 649 (N.D. 2008), the North Dakota court said more explicitly that equitable relief is available in appropriate circumstances:

> A court may invoke its equitable powers and an option may nevertheless be enforced even if the holder failed to exercise it within the specified time if: (1) the delay is slight, (2) the delay has not prejudiced the other

party, and (3) a failure to grant relief would result in such hardship as to make literal enforcement of the option unconscionable.

*Id.* at 658. The North Dakota court thus followed the analysis of the Corbin treatise on contracts concerning missed deadlines in option contracts. *See* 1 Joseph M. Perillo, *Corbin on Contracts* § 2.15, at 203 (rev. ed. 1993). "[T]he determination of the court turns not on a single factor but on balancing the equities between the parties." *Id*. (internal quotation omitted). Equitable relief "is often for the purpose of avoiding an inequitable forfeiture, but even where no inequitable forfeiture will occur, specific performance or other appropriate remedy will nevertheless be given if there has been such reliance on the promise as to make literal compliance with the option limitation unconscionable." *Id*. at 202.

There is no genuine dispute here on the first two elements of Smucker's claim for equitable relief under the test outlined in *Langer*. Smucker's delay in giving notice to terminate the lease was slight. The four-day delay did not prejudice Commercial Resource Group. The dispositive question is whether failure to grant relief would result in such hardship as to make literal enforcement of the deadline unconscionable.

What sort of hardship would the North Dakota court consider unconscionable? The best indication comes from authorities cited by that court in explaining the equitable rule. When a lessee gives untimely notice to renew a lease, literal compliance may be unconscionable where the lessee has made "valuable improvements to the property" that would be lost if the lessee were required to relocate. *Langer*, 745 N.W.2d at 658. The loss of a strategic location, associated goodwill, three pieces of unmovable equipment, and $25,000 in moving costs was enough to show substantial harm justifying relief. *Fletcher*, 404 A.2d at 1109 (cited in *Western Tire*, 307 N.W.2d at 562). So too was the inability to recoup a lessee's full investment in equipment that had been operated for ten years of the fifteen

-10-

required, significant reduction in value of personal property that had to be removed, and loss of goodwill established over ten years. *Trollen v. City of Wabasha*, 287 N.W.2d 645, 648 (Minn. 1979) (cited in *Langer*, 745 N.W.2d at 658). Another example of unconscionable hardship involved a loss of $142,038 in improvements, the possible inability to use for tax purposes up to $100,000 in operating losses and depreciation, and the continuing liability for outstanding loans and mortgages in the amount of at least $112,000. *Aickin v. Ocean View Invs. Co.*, 935 P.2d 992, 994 n.3 & 1001 (Haw. 1997) (cited in *Langer*, 745 F.3d at 658). *See also Am. Houses, Inc. v. Schneider*, 211 F.2d 881, 883-84 (3d Cir. 1954) ($250,000 in losses, including lost improvements and moving expenses) (cited in Annotation, 44 A.L.R.2d at 1362); *JNA Realty Corp. v. Cross Bay Chelsea, Inc.*, 366 N.E.2d 1313, 1316-18 (N.Y. 1977) (loss of $55,000 in property improvements and "a considerable amount" of customer good will) (cited in *Fletcher*, 404 A.2d at 1109); *Galvin v. Simons*, 25 A.2d 64, 65-66 (Conn. 1942) ($600 in costs plus inconvenience of moving and inability to find a new location in the same area) (cited in Annotation, 44 A.L.R.2d at 1364); *Xanthakey v. Hayes*, 140 A. 808, 811 (Conn. 1928) (loss of business good will and $4,000 in improvements) (cited in Annotation, 44 A.L.R.2d at 1364).

The hardship suffered by Smucker measures up to that deemed sufficient to justify equitable relief in the authorities referenced by the North Dakota Supreme Court. Under the majority's approach, Smucker is required to pay $279,450.55 in rent payments and utility costs on a building for which it has no use. As of December 2009, Smucker notified Commercial Resource Group and others that it would close the plant in West Fargo and consolidate its operations in one manufacturing facility. Production had dropped off and demand no longer justified operating the plant; a plant in Kentucky could take over all production. Smucker ceased operations in West Fargo in April 2010, allowing two months to shut down and disassemble the plant before the expiration of the lease term in June 2010. Some parts of the building and its improvements were disassembled and sent to Kentucky. Another fifty to sixty

pieces of equipment were sold at auction. By June 30, 2010, Smucker had vacated the building.

Under these circumstances, the district court aptly concluded that to require Smucker to pay hundreds of thousands of dollars in back rent and utilities—when CRG suffered no demonstrable prejudice from a slight four-day delay in receipt of Smucker's notice to terminate—would be an unconscionable result that justifies equitable relief under North Dakota law as best it can be discerned. I would affirm the judgment of the district court.

_____