OPINION OF THE COURT
Joseph R. Glownia, J.
This is a proceeding brought pursuant to article 78 of the Civil Practice Law and Rules seeking a review of the actions of the respondents, Erie County Executive Joel A. Giambra and Erie County Commissioner of Public Works Maria Lehman, to request, receive and open bids on Capital Project No. 410-164, Phase Two. Respondents have prepared and solicited one set of bid specifications that does not include a previously negotiated project labor agreement (hereafter PLA) and a second that does.
*130 Petitioner is a labor organization that represents local construction unions in the western New York area and is a signatory to the aforesaid PLA, dated October 1999. Petitioner is requesting a temporary restraining order and permanent injunction prohibiting respondents from requesting, receiving and opening bids (bid opening is presently scheduled for March 28, 2002) on the Courthouse Project Phase Two under non-PLA specifications and directing respondents to cease and desist from further conduct which usurps the power of the Erie County Legislature with respect to Capital Project No. 410-164.
Respondents have opposed the relief requested by petitioner and cross-moved to dismiss the petition on numerous grounds.
Erie County Legislator Mark J.F. Schroeder moved for leave to intervene in support of petitioner’s position pursuant to CPLR 7802 (d), which motion the court granted at the March 15, 2002 oral argument of the instant motions.
In 1999, Erie County began construction on the Court Facilities Capital Project consisting of two phases (the project). Phase One was for the construction of a new Erie County Family Courthouse and Phase Two was for the renovation and reconstruction of existing court facilities in downtown Buffalo.
Erie County contracted with Ciminelli-Cowper and Turner Construction (hereafter Ciminelli/Turner) to be construction managers for the project both Phase One and Phase Two. In May of 1999, at the direction of the Erie County Legislature, an independent review and investigation was completed by Cashin Associates, P.C., which concluded that adoption of a PLA was the most effective way to insure on-time and on-budget completion of Phases One and Two of Capital Project No. 410-164. Said report further concluded that the requirements of the New York State competitive bidding statutes would be advanced thereby. Pursuant to the direction of the Erie County Legislature Ciminelli/Turner began negotiations for the purpose of reaching a PLA with petitioner and others relating to the project. The PLA itself is a 58 page document containing 23 articles, and pursuant to the direction of the Erie County Legislature, the PLA was included in and made a part of the bid specifications for Phase One. In September 2001, Phase One of the project was completed.
In July 2001, at the request of the Erie County Attorney, the law firm of Phillips, Lytle, Hitchcock, Blaine and Huber, LLP, hired Ernst & Young’s Construction Advisory Services to review and analyze the PLA with respect to the project. On *131 September 10, 2001, Ernst & Young issued a 28 page PLA evaluation report, with exhibits, setting forth numerous findings and conclusions. In general, Ernst & Young concluded that the project was completed on time, within budget, and with little labor discord. The report goes on to conclude that PLAs are overall more costly.
On September 24, 2001, Erie County Executive Giambra wrote a letter to the honorable members of the Erie County Legislature, in which he referenced several conclusions reached in the Ernst & Young report and stated:
“I have authorized Department of Public Works Commissioner Maria Lehman to prepare two sets of bid specifications for Phase Two of the Project. One set will incorporate the PLA requirements, the other set will not. A request for bids will be advertised, and prospective bidders responding to the advertisement will receive both sets of bid specifications. Prospective bidders will be encouraged to bid on one or both sets of specifications. The purpose of preparing, advertising and receiving bids under a PLA scenario and a non-PLA scenario will be to determine which scenario will cost less — and save the taxpayers the most money — for Phase Two of the Project.
“After the bid opening, the Department of Public Works will file with the Clerk of the Legislature a summary of the bid responses. The DPW will also file at that time a resolution package wherein Your Honorable Body will be asked to review the evidence presented and to vote to either terminate or continue the PLA for- Phase Two of the Project. If you vote to terminate the PLA the Department of Public Works will award all contracts to the lowest bidders on the non-PLA bid specifications. If you vote to continue the PLA for Phase Two, the Department of Public Works will award all contracts to the lowest responsible bidders on the PLA specifications.”
With that letter the County Executive provided a copy of the Ernst & Young report to the legislators for their review.
On October 18, 2001, the Erie County Legislature passed amendment to Resolution 20-8 Intro. In part, said amendment determined Phase One of the project successful using a PLA, and “resolved, that this Honorable Body does hereby support utilizing a Project Labor Agreement on the next phase of said *132 Project.” The Legislature directed the County Attorney to prepare a new PLA.
In a letter dated January 17, 2002 the Erie County Attorney advised the Legislature that a new PLA need not be drafted for Phase Two of the project because the current one continues to remain in place and will apply unless terminated. He further states that the Commissioner of Public Works has the sole and exclusive authority for implementing bidding procedures for all County public works projects, and that, after the bid opening, the Legislature will decide whether or not to continue the PLA on Phase Two of the project.
After consultation with respondent Giambra, respondent Lehman directed her department to prepare two sets of bid specifications (one PLA and one non-PLA), which were noticed to the public at large in separate documents dated February 14, 2002.
Petitioner commenced this proceeding by order to show cause, granted March 7, 2002, with oral argument scheduled and heard on March 15, 2002.
It is petitioner’s position on these motions that the Erie County Legislature on October 18, 2001 not only resolved to continue the use of PLA for Phase Two of the project but that the PLA, by its own terms, automatically applies to Phase Two. Petitioner argues therefore that the actions of both respondents in orchestrating a dual bid process are a flagrant violation of the powers reserved to the Erie County Legislature and an interference with the contractual rights accruing to petitioner pursuant to the PLA. Accordingly, petitioner submits that respondents’ actions are arbitrary and capricious, without rational basis, and are contrary to law and outside the scope of their authority in violation of the Erie County Charter and doctrine of separation of powers.
Conversely, respondents, in support of their claim that the petition should be dismissed, assert the following grounds:
“Petitioner’s proceeding is not ripe for review; Petitioner lacks standing to bring this proceeding; Portions of Resolution 20-8 are unenforceable; The dual bidding process is consistent with the separation of powers between the Erie County Executive and Legislative branches; The dual bidding process is consistent with and authorized by the Project Labor Agreement and Respondents’ decision to utilize a dual bidding process is neither arbitrary nor capricious.
*133 “The rule of law concerning ‘standing’ is as follows:
“The standing of an organization to maintain an action on behalf of its members requires that some or all of the members themselves have standing to sue, for standing which does not otherwise exist cannot be supplied by the mere multiplication of potential plaintiffs. Additionally, the interests which the organization seeks to protect must be germane to its purposes, the court should be satisfied that the organization is an appropriate one to act as the representative of the group whose rights it is asserting, and neither the relief requested nor the claims asserted must require participation of the individual members (Hunt v Washington State Apple Adv. Comm., 432 US 333.) It is enough to allege the adverse effect of the decision sought to be reviewed on the individuals represented by the organization (Matter of Douglaston Civic Assn. v Galvin, 36 NY2d 1, 7); the complaint need not specify individual injured parties. (National Organization for Women v State Div. of Human Rights, 34 NY2d 416.) See Matter of Dental Society v Carey, 61 NY2d 330, pps 333-334.”
Petitioner is a representative of various construction trade and craft unions that have a direct and immediate economic interest which is not speculative. Further, petitioner is a signatory to the PLA, and is seeking to enforce its terms in order to insure that all bids are in accord with said PLA. Petitioner thus is a proper party to bring this proceeding.
Respondents’ attack on the “ripeness” of the claim is likewise misdirected. The questions presented in this case, i.e., the applicability of the PLA, vel non, whether respondents are usurping the Legislature’s power and are acting outside their authority in light of the Erie County Charter and doctrine of separation of powers are questions within traditional competence of the courts to decide. Additionally, by virtue of the finality of the positions of the parties here, an immediate harm to the contractual relationship between petitioner and the Legislature is presented.
The Erie County Charter sets forth the respective roles and responsibilities of the Erie County Legislature, the Erie County Commissioner of Public Works, and the Erie County Executive.
Section 202 (j) of the Charter, entitled article II, Legislative Branch, Powers and duties, provides the Legislature with the *134 sole and exclusive power “[t]o award contracts submitted to it for approval on bids or otherwise and to determine whether acceptance of any bid or award of any proposed contract will best promote the public interest. In awarding of contracts, the first consideration shall be given to the best promotion of the public interest.” Section 1902 (b) of the Charter, entitled article XIX, General Provisions, Approval of contracts, provides that, any contract, to which the County is a party, “shall require approval by the county legislature, if said contract is for (b) the erection, alteration or demolition of a building or other structure.”
Section 1002 (c) of the Charter, entitled article X, Department of Public Works, Powers and duties, gives the Commissioner of Public Works the sole and exclusive power to “[AJdvertise and call for bids on construction of each public works project of the county, open such bids publicly, tabulate them and submit recommendations with respect thereto to the county legislature and county executive.”
Section 302 of the Charter, entitled article III, Executive Branch, Powers and duties, sets forth that the County Executive shall “[b]e the Chief Executive Officer and Administrative Head of the county government.”
The Charter does not grant to the County Executive nor the Commissioner of Public Works the authority to award contracts. The Charter grants that authority solely to the Legislature along with the power and duty “to determine whether acceptance of any bid * * * will best promote the public interest * * * .”
In May 1999, the Erie County Legislature exercised its sole authority and determined that “the best interests of the public” required that the contract to be awarded on the project should be with PLA specifications on both Phase One and Phase Two. In so doing, it must be presumed the Legislature weighed numerous considerations along with cost to have properly exercised their authority in requiring a PLA (see Matter of New York State Ch., Inc., Associated Gen. Contrs. of Am. v New York State Thruway Auth., 88 NY2d 56).
Thereafter, in or about October 1999, after extensive and expensive negotiations with a number of labor organizations, including petitioner, the Erie County Legislature exercised its authority by authorizing Ciminelli/Turner to enter into the instant PLA contract. Said PLA clearly contemplates both phases; however, the County Legislature reserved the right under article IV to unilaterally terminate the PLA upon the completion of Phase One.
*135 Article IV of the PLA, entitled “termination of agreement after phase one,” reads as follows:
“Upon the completion of Phase One, the County may require the Construction Manager to unilaterally terminate this Agreement in its sole and exclusive discretion by giving at least thirty (30) days written notice to the parties hereto prior to the commencement of Phase Two. If not so terminated, it shall automatically apply to Phase Two of the Project.
“It is understood and agreed that the purpose of this termination provision is to reserve to the County, near the completion of Phase One, the ability to conduct a review, if prudent and reasonable, to determine whether the implementation of this Agreement for Phase One has been consistent with the purposes and goals [of] New York’s competitive bidding statutes and has resulted in the obtaining of the best work at the lowest possible prices; the elimination of favoritism, improvidence, fraud and corruption in the awarding of public contracts; cost savings for the taxpayers and minimal disruption and inconvenience to the Courts of Erie County and the public at large; and, therefore, whether the Agreement should for those same and other considerations continue to be applicable to Phase Two.”
Article IV provides the Legislature with the option, in its sole and exclusive discretion, to require the construction manager to terminate the PLA at least 30 days prior to the commencement of Phase Two of the project. It also permits (but does not mandate) near the completion of Phase One, a review of that phase of the project to determine whether the implementation of the PLA was beneficial to the County and the public at large. Article IV also mandates that if the PLA is not so terminated within the time limitation proscribed, it shall automatically apply to Phase Two of the project.
The motions before the court present the question whether the County may at this juncture, or subsequent to the solicitation and opening of bids, invoke article IV to terminate the PLA within the time limitation proscribed, to wit, “at least thirty (30) days * * * prior to the commencement of Phase Two.” Nowhere in the PLA does it define the term “commencement of Phase Two.”
The plain meaning of the word “commence” is “1: to enter upon: begin, start * * * 2: to initiate formally by performing *136 the first act of* * * (See Webster’s Third New International Dictionary 456 [1964 unabridged ed].)
It is well settled law that:
“Where a contract contains a reserved option for its termination or rescission at a specified time period or date, the time period so specified is of the essence, and the option cannot be exercised after the time period or date thus specified has gone by. This result has been reached with fair uniformity where the language of the contract provided for the exercise of the option ‘on or before’ a specified time or date, or ‘within’ a specified period. Contract language which clearly and explicitly establishes the time for notice will be interpreted according to its terms.” (See 22A NY Jur 2d, Contracts § 493, at 199.)
It is also equally well settled that “a reserved right to terminate a contract may be waived.” (See 22A NY Jur 2d, supra § 492.)
Two events have transpired which are of such significant effect that this court must conclude the Legislature’s option to terminate is no longer viable and that the PLA automatically applies to Phase Two.
First, on October 18, 2001, after receiving and reviewing both the September 2001 Ernst & Young study and the September 24, 2001 Giambra letter, the Legislature (the contracting authority) resolved, “that this Honorable Body does hereby support utilizing a Project Labor Agreement on the next phase of said project.” Further, the Legislature directed affirmative steps by the Departments of Law and Public Works to effectuate its intent. Clearly, the Legislature was well aware of its option to unilaterally terminate the PLA and chose not to exercise it. Instead, by its resolution and actions, the Legislature evidenced an intent not to terminate but voted to utilize the PLA for Phase Two. This action was within the time frame contemplated by the agreement, to wit, upon the completion of Phase One and at least 30 days prior to the commencement of Phase Two. As the contracting authority, it had such prerogative whether a review of Phase One was conducted and/or completed or not. Such action was, at the very minimum, an implicit waiver of the Legislature’s right to terminate. Having once acted the Legislature caused the automatic renewal of the contract and it cannot now act to rescind the PLA.
Secondly, logic and common sense compel the only conclusion that the bidding process itself is such an integral part of *137 the continuing overall Capital Project No. 410-164 that the solicitation of bids equates to and defines the term “commencement of Phase Two” for purposes of cutting off the Legislature’s right to terminate.
While courts should not undertake the construction of an unambiguous agreement, the question of whether ambiguity exists must be determined by reading the agreement as a whole and is a question of law for the court. The customs, practices, usages and terminology as generally -understood in the particular trade or business are to be examined, and extrinsic and parole evidence may be considered.
The particular trade that is before the court is the construction industry, which industry includes many trades and workers in the typical construction sense, i.e., carpenters, drywallers, electricians, plumbers, etc., who are thought of as construction workers. The term construction project or phase thereof, however, connotes a much broader concept. That term brings to mind numerous other less typical construction groups whose work is essential to, and a condition precedent to the work of the construction worker and whose activities may mark the beginning of a construction project. These groups include, for example, engineers, draftsmen, architects, surveyors, along with commissioners of public works. To equate actual construction, i.e., the shovel in the ground or the first worker beginning work with “commencement of Phase Two of the Project” ignores the realities of the construction industry and what must be completed prior to the first trade worker beginning work under this Phase. Clearly Phase Two would have “commenced” at some point earlier. This court finds that the logical point of commencement within the preliminary construction industry work would be the affirmative act of soliciting Phase Two bids.
In the PLA, the parties agreed that the cutoff date for the Legislature’s right to terminate would be 30 days prior to the commencement of Phase Two of the project. After applying the plain meaning of the word “commence,” i.e., “by performing the first act of’ to the concept of “Phase Two of the Project,” this court can only conclude that the actions of respondent Commissioner of Public Works Lehman, in initiating the bid process, constituted “commencement of Phase Two of the Project” and effectively cut off the Legislature’s right to terminate.
To argue that solicitation of dual bids is permitted as part of the review process of Phase One distorts the very essence of the PLA which requires only workers under the terms of the PLA and therefore solicitation of bids in conformity with that agreement.
*138 That having been said, the Legislature cannot now act to terminate the contractual rights of petitioner in light of its October 18, 2001 resolution and the passage of the time frame proscribed in the PLA. Furthermore, to solicit dual bids when the Legislature has determined the construction will be under the PLA is in violation of the appropriate powers and duties set forth in the Erie County Charter and doctrine of separation of powers. It is also in violation of petitioner’s rights under the PLA.
Therefore, the injunctive relief as requested by petitioner is appropriate and granted.