2008 ND 40

**Henry J. LANGER, Mary Ann Weiss, Plaintiffs, Appellants and Cross–Appellees**

**and**

**Josephine I. Pender, Plaintiff**

**v.**

**Lyle BARTHOLOMAY and Kelly A. Thompson, d/b/a B & T Farms, Defendants, Appellees and Cross-appellants.**

No. 20070056.

Supreme Court of North Dakota.

Feb. 29, 2008.

Rehearing Denied April 14, 2008.

Joel M. Fremstad (argued) and Kristi L. Haugen (on brief), Nilles, Ilvedson, Plam-

beck & Selbo, Ltd., Fargo, N.D., for plaintiffs, appellants and cross-appellees.

Jonathan T. Garaas, Garaas Law Firm, DeMores Office Park, Fargo, N.D., for defendants, appellees and cross-appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Henry J. Langer and Mary Ann Weiss ("landowners") appeal, and Lyle Bartholomay and Kelly A. Thompson, doing business as B & T Farms, cross-appeal from a judgment entered after a bench trial awarding B & T Farms $37,081.82 for the breach of a farm lease. We conclude the district court's findings that B & T Farms did not breach the lease by producing sugar beets on the land, the landowners' repudiation constituted an anticipatory breach of the lease, and the court's award of damages are not clearly erroneous. We affirm the judgment.

I

[¶ 2] Langer, Weiss, and Josephine Pender own eight quarter-sections of farmland in Cass County, which they rent out. Langer manages the property and is responsible for soliciting prospective tenants and negotiating rental contracts.

[¶ 3] In 1999, the landowners began looking for a new tenant and accepted bids from interested farmers. They sent B & T Farms a letter inviting a bid, which included information about the land and preferred payment terms, but did not disclose that the landowners did not want to rent to someone who planned to grow sugar beets on the land. The landowners received a bid from B & T Farms, which said, "[d]ue to the low crop prices of wht [sic], corn, soybeans, and all other farm commodities. We are offering a bid of $57 per acre." After some negotiations about the rental price, the landowners agreed to rent 1,176.3 acres of farmland to B & T Farms for $59 per acre for the 2000 through 2004 crop years. A one-page lease containing a description of the land and the negotiated terms was signed. In 2004, the parties negotiated a new lease. Under the new agreement, B & T Farms rented 1,190.9 acres of farmland for the 2005, 2006, and 2007 crop years at $70 per acre. Both leases contained a termination clause, which said, "both parties have the option to leave the contract with written notice by September 1, of each year."

[¶ 4] In March 2005, the landowners learned B & T Farms was planning to grow sugar beets on the rental land. Langer contacted Bartholomay and informed him he did not want sugar beets grown on the land. Langer and Bartholomay testified this was the first time they discussed Langer's desire not to have sugar beets grown on the land. Langer testified he learned in April 2005, B & T Farms sublet approximately 140 acres of the rental land to another farmer for $110 per acre and sugar beets had been planted on that portion of the land.

[¶ 5] In an August 23, 2005, letter, the landowners advised B & T Farms the lease did not allow them to produce sugar beets or assign, sublet, or sharecrop the land. The landowners claimed B & T Farms were in breach of the lease, they threatened to sue if the dispute was not amicably resolved, and stated they would accept $15,000 to settle the matter. On September 9, 2005, B & T Farms sent the landowners a letter in response denying the lease did not allow subletting or the production of sugar beets. B & T Farms claimed they had fully honored the lease and the landowners' claims were frivolous.

[¶ 6] On September 15, 2005, Langer sent B & T Farms a letter notifying them he was cancelling the lease. B & T Farms responded four days later, advising the landowners that cancelling the lease would

constitute an anticipatory breach of the lease, requesting a retraction, and questioning whether all three landowners agreed to terminate the lease. The landowners responded on September 26, 2005, confirming that Langer represents the landowners for purposes of dealing with B & T Farms and the landowners all agreed to cancel the lease, and claiming the notice of termination was timely and B & T Farms breached the lease.

[¶ 7] The landowners sued B & T Farms in November 2005, alleging B & T Farms breached the lease by growing sugar beets, seeking damages for the breach, and requesting declaratory relief holding the landowners timely terminated the lease. B & T Farms filed an answer and counterclaim, denying they breached the lease, and seeking damages for lost profits for the 2006 crop year arguing the landowners' untimely notice of termination constituted an anticipatory breach of the lease. B & T Farms sought damages of $148,327.28, based on the amount of profits they would have lost if they had planted approximately 1,200 acres of soybeans on the landowners' property during the 2006 crop year. B & T Farms claimed they would have planted 910.7 acres of food grade soybeans, which would have an average yield of 32 bushels per acre, and would have sold for a price of $8.03 per bushel. They claimed they would have planted "Roundup Ready" soybeans on the remaining 280.2 acres, which would average 32 bushels per acre, and would have sold for $5.43 per bushel. They calculated projected expenses of $150,795.74, which included the cost of seed, chemicals, insurance, fuel, rent, and repairs. Based on these calculations, B & T Farms claimed they would have a net profit of $148,327.28 for the 2006 crop year. B & T Farms relied on 2004 and 2005 Cass County average yields to calculate its estimated 2006 yields, and it used the market values of the two types

of soybeans at the time of its counterclaim to estimate the value of the crops. Bartholomay and Thompson testified they had never grown the particular type of food grade soybeans used in their damage calculations, and they had never grown all soybeans on the landowners' property. Bartholomay testified B & T Farms historically grew wheat, corn, soybeans, and barley on the landowners' property. There was evidence B & T Farms only planted soybeans on 300 acres of the landowners' farmland in prior years with a normal crop rotation.

[¶ 8] A bench trial was held in July 2006. The district court found the lease was fully integrated and unambiguous and the parties' obligations under the terms of the lease were not subject to modification by circumstances or parol evidence, and therefore B & T Farms did not breach the lease. The court also found, "Plaintiffs argue custom and usage should dictate that the planting of sugar beets or subletting to others would be a basis for termination. The Court does not find that custom or usage has been proved by Plaintiffs under the circumstances of the case." The court held the landowners' repudiation constituted an anticipatory breach because time was of the essence and the landowners did not timely terminate the lease. The court awarded B & T Farms damages in the amount of $37,081.82 for lost profits, finding B & T Farms failed to provide credible evidence of all its lost profits:

> The Court does not find it realistic that Defendants would have planted every acre to soybeans in 2006 when their historical rotation included wheat, corn and barley. No evidence was submitted relative to the Defendants' history other than that they were good operators. The Court doesn't doubt this. The tax returns were not helpful since they included income from more acres than the

leased acres from Plaintiff. Three hundred acres is one-quarter of the leased acres. There is evidence that last year they planted 300 acres to soybeans. One-quarter of $148,327.28 is $37,081.82. As to the balance of the acreage, the Court does not find the Plaintiffs [sic] presented credible evidence on which it can make an award.

[¶ 9] On June 9, 2006, Pender died. Neither party moved to substitute her estate and the action against her was later dismissed.

## II

[¶ 10] The landowners argue the district court erred in finding B & T Farms did not breach the lease by allowing sugar beets to be produced on the rental property. The landowners contend there was an implied agreement based on custom and usage that sugar beets would not be grown on the land. They argue there was evidence farmland is rented at a higher price when it is used to produce sugar beets, they declined a higher bid from another farmer who wanted to grow sugar beets, B & T Farms originally submitted a bid for a lower price which would not include growing sugar beets, and B & T Farms did not use the land to grow sugar beets during the first lease. They claim this is evidence of an implied agreement that B & T Farms would not use the land to produce sugar beets, and B & T Farms breached the agreement.

[¶ 11] A party has breached a contract when it fails to perform a contractual duty when it is due. *WFND, LLC v. Fargo Marc, LLC*, 2007 ND 67, ¶ 13, 730 N.W.2d 841. The burden of proving a breach occurred is on the party asserting the breach. *Id.* The district court's finding about whether a party has breached a lease is a finding of fact subject to the clearly erroneous standard of review. *Kel-*

*ler v. Bolding*, 2004 ND 80, ¶ 17, 678 N.W.2d 578. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 15.

[¶ 12] Contracts are construed to give effect to the parties' mutual intent at the time the contract was formed, and if possible, we look to the writing alone to determine the parties' intent. *Fargo Foods, Inc. v. Bernabucci*, 1999 ND 120, ¶ 13, 596 N.W.2d 38. Interpretation of a contract is a question of law, if the parties' intent can be determined from the language of the contract alone. *VND, LLC v. Leevers Foods, Inc.*, 2003 ND 198, ¶ 34, 672 N.W.2d 445. Whether a contract is ambiguous is a question of law, which we review independently. *Spagnolia v. Monasky*, 2003 ND 65, ¶ 10, 660 N.W.2d 223. A contract is ambiguous if rational arguments can be made for different interpretations. *Id.* If a contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the terms of the contract and the parties' intent become questions of fact. *Id.* " 'If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language.' " *VND*, at ¶ 34 (quoting *Prairieview Nursing Home v. North Dakota Dep't of Human Servs.*, 1999 ND 142, ¶ 10, 598 N.W.2d 116). The rules of contract construction are also applied to leases. *VND*, at ¶ 34. A lease is generally construed most strongly against the lessor. *Id.*

[¶ 13] The district court found the language of the lease was not ambiguous and the parties' obligations under the terms of the lease were clear and were not subject to modification by circumstances or parol evidence. The evidence is clear the parties never discussed whether B & T Farms

could grow sugar beets on the land while negotiating the lease. Langer testified he did not discuss his desire not to have sugar beets grown on the land with B & T Farms until March 2005. The lease does not limit what crops the tenants may produce on the land, and the lease does not expressly provide that B & T Farms may not produce sugar beets on the land. We conclude the lease is not ambiguous and does not restrict which crops B & T Farms could produce on the rental land.

[¶ 14] However, unless an agreement is completely integrated, evidence of consistent additional terms is admissible. *Felco, Inc. v. Doug's North Hill Bottle Shop, Inc.*, 1998 ND 111, ¶ 18, 579 N.W.2d 576. The landowners claim essential elements of the agreement were not reduced to writing, but were implicitly understood between the parties as customs of farm leases in the geographic area. They claim an implied agreement about sugar beets does not contradict the written terms of the lease, and therefore evidence of the implied agreement should have been considered. The landowners argue B & T Farms knew they were not allowed to grow sugar beets on the land because Langer did not accept a higher bid from a farmer who wanted to grow sugar beets, B & T Farms' bid did not specifically list sugar beets as a crop they were planning to grow, B & T Farms did not grow sugar beets on the land during the 2000 through 2004 crop years, and B & T Farms' bid was for a lower amount of rent than Langer thought a farmer would bid if the farmer was planning to grow sugar beets. They claim the agreement not to use the land to produce sugar beets is implied based on custom and usage.

[¶ 15] This Court has addressed when custom and usage may be used to interpret a contract, and we said:

Custom and usage may be given effect as part of a written contract where the agreement is silent or ambiguous on a point, and where there is a well-established custom concerning a subject so that the parties may be presumed to have acted with reference to the custom. The custom or usage must be proved as any other fact. Whether or not a custom or usage exists is a question of fact. *VND*, 2003 ND 198, ¶ 42, 672 N.W.2d 445 (quoting *Hager v. Devils Lake Pub. Sch. Dist.*, 301 N.W.2d 630, 634 (N.D.1981) (citations omitted)).

[¶ 16] The district court found the landowners did not prove custom or usage under the circumstances of this case. While there was evidence about Langer's desire not to rent the land to a farmer who planned to grow sugar beets, the district court concluded there was not an implied agreement based on custom and usage, and the evidence supports the court's findings. Langer testified that rental prices are higher for farmland if the tenant plans to grow sugar beets, and he turned down an offer for a higher amount of rent because the prospective tenant planned to grow sugar beets. There was also testimony from Bartholomay that $70 per acre, which was the rental amount under the terms of the second lease, was consistent with the price of renting farmland to produce sugar beets. There was evidence submitted that the average rent in Cass County for non-irrigated crop land in 2005 was $55.60 per acre, and $56.70 in 2006. This evidence did not make a distinction between land used to produce sugar beets and land used to produce other commodities. The evidence supports the court's finding that the landowners failed to prove custom and usage.

[¶ 17] We conclude the lease is not ambiguous, and the district court's findings about custom and usage and that B & T

Farms did not breach the lease are supported by the evidence and are not clearly erroneous.

### III

[¶ 18] The landowners argue the district court erred in finding time was of the essence in exercising the option to terminate the lease and the landowners' untimely notice constituted an anticipatory breach of the lease. The landowners argue the court erred in concluding time was of the essence, because the lease did not expressly make time of the essence and there was no evidence the parties intended that time was of the essence. The landowners claim they gave B & T Farms notice of their decision to terminate within a reasonable time.

[¶ 19] The district court held the landowners breached the lease because they did not provide timely notice of termination:

> The letter sent by Plaintiffs' attorney on August 23, 2006 was not proper notice of termination. It merely demanded $15,000 for the planting of sugar beets on certain acres. Proper notice of termination was sent on September 15, 2006, however, it was more than two weeks beyond the contract deadline. Accordingly, the Court concludes that the Plaintiffs breached the contract between the parties. Time was of the essence.

[¶ 20] Whether or not a contract requires performance at the exact time specified in the contract depends on whether or not time is of the essence. *E.E.E. Inc. v. Hanson*, 318 N.W.2d 101, 104 (N.D.1982). Section 9–07–23, N.D.C.C., states "[t]ime is of the essence of a contract if it is provided expressly by the terms of the contract or if such was the intention of the parties as disclosed thereby." This Court has said unless the intent that time is of the essence is manifest from the face of the contract, whether the parties intended time to be of the essence is a question of fact. *Keller v. Hummel*, 334 N.W.2d 200, 203 (N.D.1983). "Where time is not of the essence, a reasonable delay in performance does not constitute a breach of contract; however, an unreasonable delay constitutes a breach and justifies the remedy of cancellation." *Id.* What is a reasonable time is a question of fact. *Id.*

[¶ 21] However, an option is different. Time is generally of the essence in exercising an option, and the optionee must perform the terms of the option within the specified time and upon the terms and conditions provided in the agreement. *In the Matter of the Estate of Thomas*, 532 N.W.2d 676, 685 (N.D.1995). " 'When the optionee decides to exercise his option he must act unconditionally and precisely according to the terms of the option. When the acceptance is so made the optionor becomes bound. Nothing less will suffice unless the optionor waives one or more of the terms of the option.' " *Fries v. Fries*, 470 N.W.2d 232, 234 (N.D.1991) (quoting 1 *Williston on Contracts*, § 62, at 206 (1957)). Courts generally construe the attempt to exercise an option strictly and require exact compliance because the optionee is free to exercise the option if he chooses, but an optionor is bound to perform if the option is properly exercised. *Fries*, at 234. " 'An option is a mere offer, and acceptance thereof must be made within the time allowed, and in minute compliance with its terms, or the optionee's rights thereunder will be lost, substantial compliance being insufficient to constitute an acceptance.' " *Id.* (quoting *Gurunian v. Grossman*, 331 Mich. 412, 49 N.W.2d 354, 357 (1951)). The same rules apply to an option in a lease. *See Western Tire, Inc. v. Skrede*, 307 N.W.2d 558, 563

(N.D.1981) (an option to renew the lease was not met because the manner and time period required for exercising the option was not complied with); 49 Am.Jur.2d *Landlord and Tenant* §§ 199–200 (2007); 15 Richard A. Lord, *Williston on Contracts,* § 46:12, at 459–68 (4th ed.2000). Courts in other jurisdictions have also applied these rules and have required exact compliance with the terms of the agreement to properly exercise an option, including an option to terminate a lease as well as an option to renew a lease. *See, e.g., USA Network v. Jones Intercable, Inc.,* 729 F.Supp. 304, 309–10 (S.D.N.Y. 1990) (time of the essence in exercising option to terminate contract, notice of termination was ineffective because 12 days late); *Vending Credit Corp. v. Trudy Toys Co.,* 5 Conn.Cir.Ct. 629, 260 A.2d 135, 137–38 (1969) (time is of the essence in exercising option to terminate lease); *Piedmont Center 15, LLC v. Aquent, Inc.,* 286 Ga. App. 673, 649 S.E.2d 733, 735 (2007) (as a general rule time is of the essence in option contracts, applies to options to cancel a lease); *Boody v. Giambra,* 192 Misc.2d 128, 744 N.Y.S.2d 803, 809 (N.Y.Sup.Ct. 2002) (time of the essence in option to terminate contract); *Western Sav. Fund Soc'y of Phila. v. Southeastern Pa. Transp. Auth.,* 285 Pa.Super. 187, 427 A.2d 175, 178–79 (1981) (time is of the essence in option to renew lease).

[¶ 22] In this case, the lease provided that the option to terminate must be exercised by providing "written notice by September 1, of each year." The option is not ambiguous. The district court found the landowners did not provide written notice of their intent to terminate the lease until September 15, 2005, and the evidence supports the court's finding. Because the provision allowing either party to terminate the lease is an option in the lease, the option must be strictly construed and the landowners must have complied with all of the terms to exercise the option. The landowners argue if specifying a date in the lease makes time of the essence, all rental agreements related to farming would either impliedly or expressly include a "time is of the essence provision" and N.D.C.C. § 9–07–23 would be left without meaning. However, their argument is not persuasive; the landowners' failure to comply with the time requirement resulted in a breach of the contract because the provision of the farm lease at issue is an option to terminate and options are strictly construed and require exact compliance. We conclude as a matter of law that time was of the essence, and therefore the landowners failed to give timely notice of their intent to exercise the option to terminate the lease.

[¶ 23] In cases involving contracts for real estate and leases, some courts have invoked their equitable powers and allowed an option to be exercised when the requirements for the option have not been met. *See, e.g., Aickin v. Ocean View Invs. Co., Inc.,* 84 Hawai'i 447, 935 P.2d 992, 1000–02 (1997); *Trollen v. City of Wabasha,* 287 N.W.2d 645, 647–48 (Minn.1979). In *Western Tire,* 307 N.W.2d at 562, this Court acknowledged it may be appropriate in some circumstances to grant equitable relief and decline to strictly construe an option, but we declined to grant equitable relief under the circumstances of that case. A court may invoke its equitable powers and an option may nevertheless be enforced even if the holder failed to exercise it within the specified time if: (1) the delay is slight, (2) the delay has not prejudiced the other party, and (3) a failure to grant relief would result in such hardship as to make literal enforcement of the option unconscionable. *See Id.* at 563. Equitable relief is generally granted in cases where a lessee has made valuable improvements to the prop-

erty in expectation of renewing a lease, but the lessee's notice to renew is slightly past the deadline, and the relief is necessary to avoid inequitable forfeiture or literal compliance is unconscionable. *Andrews v. Blake,* 205 Ariz. 236, 69 P.3d 7, 14–15 (2003).

[¶ 24] Although the landowners did not specifically request equitable relief, they did argue they provided notice of their intent to terminate the lease within a reasonable time because the delay was slight, they had raised their concerns with B & T Farms before September 1, and there is no evidence of prejudice. The landowners notice may have been reasonable if time was not of the essence, but there is insufficient evidence to conclude the failure to grant relief would result in an inequitable forfeiture or that literal compliance is unconscionable; therefore equitable relief is not appropriate under the circumstances of this case.

[¶ 25] We conclude time was of the essence, and the district court's finding that the landowners' repudiation constituted an anticipatory breach of the lease is supported by the evidence and is not clearly erroneous.

## IV

[¶ 26] Both parties appeal the district court's damage award. The landowners argue the court erred in awarding damages because B & T Farms did not provide the best evidence available and the methodology used to calculate the damages is without legal and factual support. B & T Farms claim the district court erred in not awarding them the full amount of damages requested.

[¶ 27] "A [district] court's determination of the amount of damages caused by a breach of contract is a finding of fact subject to the clearly erroneous standard of review." *Keller,* 2004 ND 80, ¶ 22, 678 N.W.2d 578. When damages are an adequate remedy, they must be proved, and the difficulty in proving the amount does not preclude recovery. *Livinggood v. Balsdon,* 2006 ND 11, ¶ 8, 709 N.W.2d 723. "[W]here damage obviously has been suffered, but there is no definite evidence available for an exact determination of the amount of damage resulting from a breach of contract, the best evidence which the circumstances will permit is all the law requires." *Id.* Damages for lost profits are recoverable where they are reasonable and not speculative. *Leingang v. City of Mandan Weed Bd.,* 468 N.W.2d 397, 398 (N.D.1991). In cases where the amount of damages may be hard to prove, "'the amount of damages is to be left to the sound discretion of the finder of facts.'" *Keller,* at ¶ 21, (quoting *B.W.S. Invs. v. Mid–Am Restaurants, Inc.,* 459 N.W.2d 759, 764 (N.D.1990)).

## A

[¶ 28] The landowners argue the evidence does not support B & T Farms' claims for damages and the methodology the court used to calculate the damages is without legal and factual support. The landowners claim B & T Farms' hypothetical damages ignored their prior crop rotations, ignored the 2006 crop year weather conditions, contained projections for crops B & T Farms had not previously grown, contained yield averages unrelated to B & T Farms' yields in prior years, and contained average and outdated prices for crop inputs that were not what B & T Farms actually paid. They argue B & T Farms did not present the best evidence available and should have offered evidence from their prior crop years or evidence of the 2006 crop year, which was underway at the time of trial, and they did not include all their expenses in their damage calculations. The landowners claim the district

court relied on unsupported and speculative information to calculate B & T Farms' damages.

[¶ 29] The landowners cite *Keller*, 2004 ND 80, 678 N.W.2d 578, in support of their claim that B & T Farms did not provide the best evidence of lost profits because they did not provide evidence of profits from prior years. In *Keller*, the injured party testified about what his average profits were over a five-year period, and this Court affirmed the district court's decision to award damages, holding the evidence supported the court's findings. *Id.* at ¶ 24. However, we did not say the best and only type of evidence that can be used to prove lost profits was evidence of prior years' profits. While evidence of past profits is generally an appropriate method to calculate estimated future profits, there are many different methods that may be used, and whichever method is used must be reasonably accurate and provide a fair basis for calculating the damages. *See* 24 Richard A. Lord, *Williston on Contracts*, § 64:11, at 108 (4th ed.2002). "Where a plaintiff offers evidence estimating anticipated profits with reasonable certainty, they may be awarded." *Leingang*, 468 N.W.2d at 398.

[¶ 30] B & T Farms provided evidence of county average yields for soybeans for the two crop years immediately preceding the trial. They provided evidence of the price of soybeans at the time they filed their counterclaim. They also provided evidence of their estimated expenses, and there was testimony supporting that evidence. While this evidence may not produce the exact amount of the damage resulting from the landowners' breach, the best evidence the circumstances permit is all that is required, and "[w]here it is reasonably certain that substantial damages have resulted, mere uncertainty as to the exact amount will not preclude recovery." *See Keller*, 2004 ND 80, ¶ 21, 678 N.W.2d 578. The method used in this case was reasonably accurate and provided a fair basis for calculating the lost profits. We are not left with a definite and firm conviction the district court's damage calculations are clearly erroneous.

B

[¶ 31] B & T Farms argues the district court erred in not awarding them the full amount of damages requested. The landowners claim B & T Farms is not entitled to receive any damages because they tried to inflate their damages by claiming they were going to plant soybeans on the entire rental land in 2006.

[¶ 32] B & T Farms only presented evidence of lost profits for the production of soybeans. Bartholomay testified B & T Farms' crop rotation changed little from year to year and they had never grown only one crop on the landowners' property. Bartholomay also testified that if B & T Farms had continued to rent the landowners' property in 2006 they probably would have maintained a normal crop rotation and would not have grown 1,200 acres of soybeans on the rental property. The district court concluded it was not reasonable, based on the evidence of B & T Farms' historical growing practices, that they would have planted only soybeans on all 1,200 acres that were the subject of this farm lease. "In connection with the loss of prospective profits, the injured party can recover only to the extent that the evidence he produces affords a sufficient basis for estimating with reasonable certainty the amount of profits prevented by the wrongful breach of the contract." *Bergquist–Walker Real Estate, Inc. v. William Clairmont, Inc.*, 333 N.W.2d 414, 420 (N.D.1983). B & T Farms only provided evidence of the lost profits related to growing soybeans. There was evidence they

only planted soybeans on one-fourth of the landowners' property in the past during years of normal crop rotations, and they were likely to have a normal crop rotation in 2006 if they had continued renting the land. B & T Farms only presented evidence that provided a sufficient basis for estimating with reasonable certainty the amount of lost profits for the production of soybeans, and the district court calculated damages accordingly.

[¶ 33] B & T Farms failed to provide any proof of the remaining amount of damages, and therefore the evidence did not provide a sufficient basis for estimating with a reasonable certainty the remaining amount of profits B & T Farms might lose due to the landowners' breach. The district court concluded B & T Farms did not present credible evidence of its remaining damages. The evidence supports the court's findings, and we are not left with a definite and firm conviction a mistake was made. We conclude the court's findings are not clearly erroneous.

V

[¶ 34] We conclude the district court's findings that B & T Farms did not breach the lease, the landowners repudiation constituted a breach of the lease, and its damage award are not clearly erroneous. We affirm the judgment.

[¶ 35] DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., and LAWRENCE A. LECLERC, and EVERETT NELS OLSON, S.J., concur.

[¶ 36] The Honorable LAWRENCE A. LECLERC, S.J., and the Honorable EVERETT NELS OLSON, S.J., sitting in place of CROTHERS, J., and KAPSNER, J., disqualified.