◼ LAST TIME BEVERAGE CORP. et al., Respondents, v F & V DISTRIBUTION COMPANY, LLC, et al., Appellants. (Action No. 1.) J.C. TEA, INC., et al., Respondents, v F & V DISTRIBUTION COMPANY, LLC, et al., Appellants. (Action No. 2.) [951 NYS2d 77]—

In two related actions, inter alia, to recover damages for breach of contract, the defendants appeal from (1) an order of

the Supreme Court, Nassau County (Driscoll, J.), dated February 25, 2010, which, after a hearing, granted the plaintiffs' motion pursuant to CPLR 4403 to confirm the report of a referee dated June 17, 2009, and (2), as limited by their brief, from so much of an order of the same court dated July 15, 2010, as, upon reargument, adhered to its original determination.

Ordered that the appeal from the order dated February 25, 2010 is dismissed, as that order was superseded by the order dated July 15, 2010, made upon reargument; and it is further,

Ordered that the order dated July 15, 2010 is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the plaintiffs.

The plaintiffs in action No. 1 (hereinafter the Last Time Beverage plaintiffs) and the plaintiffs in action No. 2 (hereinafter the J.C. Tea plaintiffs) commenced these separate actions, inter alia, to recover damages for breach of contract against the defendants, F & V Distribution Co., LLC (hereinafter F & V), and Hornell Brewing Co., Inc. (hereinafter Hornell), which are both solely owned and operated by Don Vultaggio. Pursuant to orders dated February 14, 2007 and February 16, 2007, respectively, the Supreme Court referred the issue of liability in both actions to a referee to hear and report.

The Last Time Beverage plaintiffs were experienced distributors of Coca-Cola and Pepsi products in the New York City metropolitan area. After the Coca-Cola Company purchased the distribution routes of the Last Time Beverage plaintiffs in 1995, some of the former Coca-Cola distributors, including the Last Time Beverage plaintiffs, formed the corporation MetBev, Inc. (hereinafter MetBev), to sell Royal Crown soft drinks and other non-alcoholic beverages primarily in the geographic areas where they had previously distributed Coca-Cola products. Using their experience and knowledge of the soft drink industry, as well as the good will they had developed with the customers on their routes over the years, MetBev and the Last Time Beverage plaintiffs created a distribution system for the beverages they sold and, accordingly, executed Route Distribution Agreements (hereinafter the distribution agreements). These distribution agreements provided, inter alia, that MetBev would operate as a franchisor and the Last Time Beverage plaintiffs as individual distributors. Pursuant to paragraph 2.01 of the distribution agreements, each distributor's right to operate its franchise was restricted to a geographic area or "territory," which was delineated in the contract. Pursuant to paragraph 2.02, so long as the distributor was not in default under the distribution agreements, MetBev would not operate a company-owned

distributorship or award a franchise for the operation of a similar or competitive business within the distributor's territory. Also, pursuant to paragraph 9.04, the distributor had the right to sell, assign, or transfer the franchise conveyed by the distribution agreements, or all or part of the territorial rights, or any interest in these territorial rights, to a third party with the prior written consent of the franchisor, and that consent was not to be unreasonably withheld.

On December 31, 1996, MetBev executed an agreement, whereby it assigned to F & V its exclusive rights to distribute Royal Crown Cola and certain other non-alcoholic soft drinks in 12 counties in New York State (hereinafter the assignment agreement). Pursuant to the assignment agreement, F & V assumed MetBev's rights and obligations under the distribution agreements with the Last Time Beverage plaintiffs. The J.C. Tea plaintiffs were former distributors for, or employees of, F & V, who were promised that, upon the assignment of MetBev's rights to F & V, they would receive the same rights that the Last Time Beverage plaintiffs had acquired.

Thereafter, the business relationships between the two groups of plaintiffs and F & V began to deteriorate. Accordingly, the two groups of plaintiffs commenced separate actions against F & V and Hornell. Both the Last Time Beverage plaintiffs and the J.C. Tea plaintiffs alleged, inter alia, causes of action to recover damages for breach of contract, based on promissory estoppel, and for unjust enrichment. The plaintiffs also asked the Supreme Court to pierce F & V's limited liability company veil and hold Hornell liable for F & V's alleged wrongdoing on the ground, inter alia, that F & V and Hornell operated as one business entity under the control of their mutual principal owner, Don Vultaggio. The crux of the plaintiffs' complaints was that the defendants allegedly breached the distribution agreements by, among other things, changing or eliminating existing distribution rights without additional compensation, directly selling products to distributors' customers in violation of the distribution agreements, improperly transhipping products, and unreasonably withholding consent to the sale of a franchise by a distributor.

Pursuant to orders of reference made in open court on February 14, 2007 and February 16, 2007, respectively, the Supreme Court directed the referee, in relevant part, "to hear and report in this case on all issues relating to liability that underlie this matter." The referee presided over a comprehensive hearing that continued intermittently for approximately 17 months and included approximately 40 days of testimony. In a 57-page

report, dated June 17, 2009, the referee meticulously set forth his proposed findings of fact and conclusions of law. In essence, the referee recommended that the reviewing court should hold both of the defendants jointly and severally liable to both groups of plaintiffs on the theory of breach of contract or the theories of promissory estoppel and unjust enrichment. The report further recommended that the limited liability company and corporate veils, respectively, be pierced upon the ground, inter alia, that F & V and Hornell were alter egos of Vultaggio and, accordingly, of one another. The Supreme Court granted the plaintiffs' motion to confirm the referee's report. Upon reargument, the Supreme Court adhered to its original determination. The defendants appeal.

Contrary to the defendants' contention, the Supreme Court did not err, upon reargument, in adhering to its original determination confirming the referee's report. As a general rule, courts will not disturb the findings of a referee as long as they are substantially supported by the record and the referee has clearly defined the issues and resolved matters of credibility (*see Stone v Stone*, 229 AD2d 388 [1996]; *Kaplan v Einy*, 209 AD2d 248, 251 [1994]). A referee's credibility determinations are entitled to great weight because, as the trier of fact, he or she has the opportunity to see and hear the witnesses and to observe their demeanor (*see Galasso, Langione & Botter, LLP v Galasso*, 89 AD3d 897, 898 [2011]).

Here, the referee concluded that the plaintiffs presented 27 "highly credible fact witnesses," plus three expert witnesses who were familiar with the customs and practices in the soft drink industry. In contrast, the defendants presented only two witnesses, who had little or no experience in the soft drink industry. In addition, the defendants relied on the testimony of Don Vultaggio, whom the plaintiffs called as an adverse witness on their direct case, and whose testimony, according to the referee, "had less than marginal credibility."

The Supreme Court also properly confirmed the referee's recommendation that Hornell's corporate veil and F & V's limited liability company veil be pierced. The corporate or limited liability company veil will be pierced "to achieve an equitable result," among other instances, "[w]hen a corporation [or limited liability company] has been so dominated by . . . another corporation and its separate entity so ignored that it primarily transacts the dominator's business instead of its own and can be called the other's alter ego" (*Austin Powder Co. v McCullough*, 216 AD2d 825, 827 [1995]; *see Matter of Island Seafood Co. v Golub Corp.*, 303 AD2d 892, 893 [2003]; *cf. John*

*John, LLC v Exit 63 Dev., LLC*, 35 AD3d 540, 541-542 [2006]; *Rivera v Citgo Petroleum Corp.*, 181 AD2d 818, 819 [1992]; *Matter of Total Care Health Indus. v Department of Social Servs.*, 144 AD2d 678, 679 [1988]). In piercing F & V's limited liability company veil and imposing liability on Hornell, the referee and the Supreme Court properly considered several factors, including that: (1) Hornell and F & V had overlapping ownership, officers, and personnel; (2) both companies shared the same office space with other commonly-owned business entities; (3) both companies failed to observe certain formalities such as keeping certain records; and (4) F & V was not adequately capitalized, without a substantial loan from Hornell, to undertake this business venture (*see Wm. Passalacqua Bldrs., Inc. v Resnick Devs. S., Inc.*, 933 F2d 131, 139 [1991]; *Peery v United Capital Corp.*, 84 AD3d 1201, 1202 [2011]; *Matter of Island Seafood Co. v Golub Corp.*, 303 AD2d at 893-894).

Further, the Supreme Court properly confirmed the referee's conclusion that F & V breached paragraphs 2.01, 2.02, and 9.04 of the distribution agreements, which clearly and unambiguously gave the Last Time Beverage plaintiffs the exclusive right to distribute certain beverages in designated territories and the right to sell their distribution routes to third parties with MetBev's consent, which could not be unreasonably withheld.

The Supreme Court also properly confirmed the referee's determination that F & V breached paragraph 5.03 of the distribution agreements. At the hearing, the parties disputed whether, pursuant to paragraph 5.03, an exclusive right was conferred upon the individual distributors, giving them the opportunity to sell, in their respective territories, any new beverages which the franchisor became authorized to distribute in a particular distributor's territory. Although the interpretation of a clear and unambiguous contract is a function for the court, and matters extrinsic to the agreement may not be considered when the parties' intent can be gleaned from the face of the instrument (*see Teitelbaum Holdings v Gold*, 48 NY2d 51, 56 [1979]), to the extent that paragraph 5.03 of the distribution agreements, which governed the distribution of new products, may be ambiguous, the Supreme Court properly resorted to the canons of construction, and considered extrinsic evidence to ascertain the parties' intent (*see Dorman v Cohen*, 66 AD2d 411, 414 [1979]). Evidence of custom and practice in an industry is admissible to define an unexplained term (*see Hoag v Chancellor, Inc.*, 246 AD2d 224 [1998]; *Boody v Giambra*, 192 Misc 2d 128 [2002]). A party who seeks to use trade usage to define language or annex a term to a contract must show either that the other

party was actually aware of the trade usage, or that the usage was so notorious in the industry that a person of ordinary prudence in the exercise of reasonable care would be aware of it (*see Matter of Reuters Ltd. v Dow Jones Telerate*, 231 AD2d 337 [1997]). Here, that burden was met, as the plaintiffs' fact witnesses and expert witnesses consistently testified that the custom and practice in the soft drink industry was that, once a franchisor placed a new beverage on a distributor's truck, the distributor automatically acquired the exclusive right to distribute that beverage in its territory.

The J.C. Tea plaintiffs are in a different position from that of the Last Time Beverage plaintiffs because the J.C. Tea plaintiffs never executed distribution agreements. Instead, the J.C. Tea plaintiffs relied on the oral and written promises made by the defendants' representatives that these plaintiffs would receive contracts that would guarantee exclusive rights in their geographical territories, equity in their distributorships, long-term franchise relationships, and the right to assign their distributorships to third parties, subject to F & V's consent, which could not be unreasonably withheld. Based on those promises, the J.C. Tea plaintiffs invested a substantial amount of time, money, and labor to increase the equity in their distribution routes.

The defendants contend that the statute of frauds prevents the J.C. Tea plaintiffs from asserting breach of contract causes of action based on those oral promises. In support of that contention, they rely on General Obligations Law §§ 5-701 and 15-301 (1). However, the doctrine of partial performance removes an oral agreement from the operation of the statute of frauds where, as here, the plaintiffs' actions are "unequivocally referable" to the alleged oral agreement (*Messner Vetere Berger McNamee Schmetterer Euro RSCG v Aegis Group*, 93 NY2d 229, 237 [1999]; *Anostario v Vicinanzo*, 59 NY2d 662, 664 [1983]; *see Klein v Jamor Purveyors*, 108 AD2d 344, 348 [1985]).

Here, the J.C. Tea plaintiffs performed substantial obligations based on the defendants' promises, which were also articulated in the express terms and conditions set forth in the distribution agreements and the assignment agreement that governed the Last Time Beverage plaintiffs. Accordingly, the Supreme Court properly confirmed the referee's conclusion that these oral agreements should be removed from the ambit of the statute of frauds. Moreover, we agree with the referee and the Supreme Court that the J.C. Tea plaintiffs were entitled to invoke the theories of promissory estoppel (*see Rogers v Town of Islip*, 230 AD2d 727 [1996]; *Ripple's of Clearview v Le Havre Assoc.*, 88

AD2d 120, 122 [1982]) and unjust enrichment (*see Cruz v McAneney*, 31 AD3d 54, 59 [2006]).

The defendants' contention that the referee exceeded the scope of the order of reference is not before us, as it is improperly raised for the first time on appeal (*see Gross v Aetna Cas. & Sur. Co.*, 240 AD2d 468, 469 [1997]; *Fresh Pond Rd. Assoc. v Estate of Schacht*, 120 AD2d 561 [1986]).

The defendants' remaining contentions are without merit. Skelos, J.P., Florio, Eng and Sgroi, JJ., concur.