KELLY, Circuit Judge.
J.M. Smucker Co. (“Smucker”) leased a commercial building from Commercial Resource Group (“CRG”). The lease provided that, after its initial term, it would automatically renew unless Smucker provided written notice of its intent to terminate the lease 180 days prior to the end of the current term. Smucker sent a termination notice to CRG that arrived after the deadline. CRG refused to accept the notice and filed suit in federal court based on diversity jurisdiction to recover rent for the additional term. The district court found that because Smucker had substantially performed its lease obligations, it would be unconscionable to hold Smucker to the renewal. CRG appeals. With jurisdiction under 28 U.S.C. § 1291, we reverse.
I. Background
In March 2001, Smucker leased a commercial building in West Fargo, North Dakota, from CRG. The parties negotiated an amendment to the lease in 2005. The amendment provided that the lease would continue for an initial two-year term, and it gave Smucker an option to renew the lease for up to four additional one-year terms. After the initial term, the lease was set to renew automatically on July 1st of each year unless Smucker provided CRG written notice of its intent to terminate 180 days prior, i.e., by January 1st. The original lease specified the address to which the written notice should be sent (“original address”). On September 15, 2006, CRG’s management company informed Smucker of CRG’s change of address and notified Smucker that “all future rent payments and lease correspondence” should be sent to the new address (“2006 address”). Smucker received this notice and began sending rent payments to the new address. The lease was not modified to reflect the change of address.
In late 2009, Smucker decided to close down its West Fargo facility. On December 22, 2009, Smucker sent a notice of termination to CRG by way of Federal Express (“FedEx”); however, Smucker sent the notice to the original address instead of the 2006 address. On December 23, 2009, Smucker received an email from FedEx stating “FedEx attempted, but was unable to complete delivery [of the December 22, 2009, notice].” FedEx “[r]ecommended” that Smucker “[c]ontact [FedEx] to provide correct delivery address and/or additional delivery information.” Smucker took no action. FedEx sent a second email a week later, on December 30, 2009. The second email stated, “FedEx attempted, but was unable to complete delivery.” This email instructed that “[n]o action is required” because “[t]he *793 package is being returned to the shipper.” Smucker took no additional action prior to the January 1st deadline for terminating the lease.
After the deadline passed, Smucker sent a second termination notice to CRG, this time to the 2006 address. The notice was dated January 4, 2010, and it arrived on January 5, 2010. This second notice stated Smucker wanted to terminate the lease. It also explained that Smucker had sent a timely termination notice to the original address, but that notice had been returned “as undeliverable.” The parties disagree as to whether this second notice effectively terminated the lease.
The district court found that Smucker had substantially performed the contract and should not be held responsible for a “minor delay” that was the result of “an honest mistake in mailing.” The court emphasized that Smucker “made a good faith attempt” and “acted promptly to correct [its mistake].” As such, the district court held that “[t]o punish Smucker in the form of hundreds of thousands of dollars ... would be an unconscionable result ... especially where time was not of the essence to the contract and where the untimely notice did not result in any demonstrable injury to CRG.” Therefore, the district court granted Smucker summary judgment on the basis of substantial performance.
II. Discussion
We review the district court’s grant of summary judgment de novo, giving the “nonmoving party the benefit of all relevant inferences.” Nelson v. Corr. Med. Servs., 583 F.3d 522, 527 (8th Cir.2009) (en banc) (quotation omitted). The parties agree that the lease was to renew automatically unless Smucker provided written notice to CRG of its intent to terminate the lease by January 1, 2010. There is also no dispute that Smucker’s notice failed to arrive by that date. Rather, at issue in this case is whether the district court erred by: (1) failing to treat the lease cancellation provision as an option to terminate; and (2) allowing Smucker equitable relief despite failure to strictly comply with the terms of the option.
A. Option to Terminate the Lease
The district court treated the lease cancellation provision as a standard contract provision and found that: (1) Smucker had substantially performed its obligations under the lease; and (2) time was not of the essence to the lease. CRG claims the lease cancellation provision was an option to terminate the lease and as such required strict compliance, including strict compliance with the time provisions.
As a case brought under diversity jurisdiction, the district court applied North Dakota law.[1] See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 417, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010) (Stevens, J., concurring) (“It is a long-recognized principle that federal courts sitting in diversity apply state substantive law....” (quotation omitted)). Under North Dakota law, a lease is a contract between two parties, and “[t]he rules of contract construction are ... applied to leases.” Longer v. Bartholomay, 745 N.W.2d 649, 655 (N.D.2008); Rolling v. Goodyear Tire & Rubber Co., 272 N.W.2d 54, 60 (N.D.1978) (“[T]he rules of construction relating to contracts generally apply to the construction of leases.”). As with other contracts, “[w]hether or not a [lease] requires performance at the exact time specified in the [lease] depends on *794 whether or not time is of the essence.” Langer, 745 N.W.2d at 657. “[U]nless the intent that time is of the essence is manifest from the face of the [lease], whether the parties intended time to be of the essence is a question of fact.” Id. “Where time is not of the essence, [i.e., is non-material,] a reasonable delay in performance does not constitute a breach of contract.” Id. Instead, under the doctrine of “substantial performance,” a party is relieved of exact compliance with the terms of a lease if the breach of the lease terms is non-material. See VND, LLC v. Leevers Foods, Inc., 672 N.W.2d 445, 449, 453 (N.D.2003) (citing Restatement (Second) of Contracts § 241 (1977) and Rolling, 272 N.W.2d at 60); see also Restatement (Second) of Contracts §§ 241 & cmt. b, 237 & cmt. d. In this case, the district court held that time was not of the essence to the contract, and therefore Smucker’s slight delay was not a material breach.
However, option contracts are treated differently than regular contracts. Langer, 745 N.W.2d at 657. An option is an irrevocable offer by the offeror to perform. Matrix Props. Corp. v. TAG Invs., 609 N.W.2d 737, 742 (N.D.2000). See generally Restatement (Second) of Contracts § 25. “Courts generally construe the attempt to exercise an option strictly and require exact compliance because the optionee is free to exercise the option if he chooses, but an optionor is bound to perform if the option is properly exercised.” Langer, 745 N.W.2d at 657-58. “As a matter of law ... time [is] of the essence” in exercising an option contract. Id. at 658. “[T]he optionee must perform the terms of the option within the specified time and upon the terms and conditions provided in the agreement.” Id. at 657. North Dakota applies the same rules to an option in a lease as to an option to buy property, whether for an option to renew a lease or an option to terminate. Id. at 657-58.
The lease in this case contained an option to terminate, not simply a lease cancellation provision. While the original lease provided an option to renew the lease for up to three years, the amendment to the lease made renewal automatic and termination optional. The amendment reads:
[T]his Commercial lease shall be automatically extended for four (4) successive one-year periods, unless Tenant delivers written notice to Landlord of Tenant’s intention to not extend the term for said additional period, said notice to be delivered no later than 180 days prior to the expiration of an option term.
Through the provision for automatic extensions, CRG, the lessor, made an irrevocable offer to extend the lease and no longer had the ability to terminate the lease at the end of the current term — the lease would automatically renew based solely on the actions of the lessee, Smucker. The lease could only be cancelled by Smucker, and only if Smucker provided written notice to CRG by a specified date. As a result, after the amendment, Smucker held an option to terminate the lease.
As an option to terminate the lease, the cancellation provision must be “strictly construed” and “require[s] exact compliance.” Langer, 745 N.W.2d at 658. Also, “as a matter of law ... time [is] of the essence” to the option. Id. Given the significant differences between a standard lease cancellation provision and an option to terminate, we find the district court erred in failing to treat the cancellation provision in this case as an option to terminate.
B. Equitable Relief
In finding that Smucker had substantially performed its contract, the dis *795 trict court essentially found all the factors relevant to equitable relief for failure to timely exercise an option. CRG argues that these findings were in error and that equitable relief should not be granted in this case. In particular, CRG asserts that holding Smucker to the lease for another year is not unconscionable.
The Supreme Court of North Dakota has twice suggested the possibility that equitable relief may be available when a party fails to timely exercise an option. See Langer, 745 N.W.2d at 658-59; Western Tire, Inc. v. Skrede, 807 N.W.2d 558, 562-63 (N.D.1981). In Langer, the court recognized that “some courts have invoked their equitable powers and allowed an option to be exercised when the requirements for the option have not been met.” 745 N.W.2d at 658. Generally, “[a] court may invoke its equitable powers and an option may nevertheless be enforced even if the holder failed to exercise it within the specified time if: (1) the delay is slight[;] (2) the delay has not prejudiced the other party[;] and (3) a failure to grant relief would result in such hardship as to make literal enforcement of the option unconscionable.” Id. The Supreme Court of North Dakota has also noted, however, that courts generally limit equitable relief to a very particular situation: “[ejquitable relief is generally granted in cases where a lessee has made valuable improvements to the property in expectation of renewing a lease, but the lessee’s notice to renew is slightly past the deadline, and the relief is necessary to avoid the inequitable forfeiture or literal compliance is unconscionable.” Id. at 658-59.
While the district court in this case did not explicitly grant equitable relief, relying instead on the theory of substantial performance, the district court essentially applied the equitable relief test outlined in Langer. The district court found that “[u]pon discovery of the mistake, Smucker acted promptly to correct it, which caused the notice to arrive shortly after the deadline specified in the contract.” The district court also held that “[t]o punish Smucker in the form of hundreds of thousands of dollars ... would be an unconscionable result ... especially ... where the untimely notice did not result in any demonstrable injury to CRG.” Thus, the district court found that (1) the delay was slight (the notice arrived “shortly after”); (2) the delay did not prejudice CRG (no “demonstrable injury”); and (3) enforcement of the lease would be unconscionable (“would be an unconscionable result”).
Assuming without deciding that equitable relief is an available remedy in this case, we find there is no showing of unconscionability upon enforcement of the lease.[2] In North Dakota, “[t]he determination whether a particular contractual provision is unconscionable is a question of law for the court.” Strand v. U.S. Bank Nat’l Ass’n ND, 693 N.W.2d 918, 921 (N.D.2005). We conclude, as a matter of law, that the harm suffered by Smucker is not so great as to rise to the level of substantive unconscionability. There is no evidence that Smucker was at risk of losing anything other than one year’s rent if *796 the lease were enforced. See Langer, 745 N.W.2d at 658. In addition, there has been no showing that payment of one year’s rent, in and of itself, constitutes a forfeiture or otherwise unconscionable result. Indeed, in exchange for the rent paid, Smucker received the lease to, and thus the use of, the building for an additional year. On this record, there is insufficient evidence to conclude as a matter of law that enforcing the terms of the lease against Smucker will cause Smucker “such hardship as to make literal enforcement of the option unconscionable.” Id.
III. Conclusion
For the reasons above, we reverse the district court’s order granting summary judgment to Smucker and remand for further proceedings consistent with this opinion.

. We note the lease also contains a specific choice-of-law provision in which the parties chose North Dakota law to govern this dispute.

. It is an open question whether North Dakota would allow equitable relief in a case such as this. See Langer, 745 N.W.2d at 658-59 (discussing the possibility of equitable relief); Western Tire, 307 N.W.2d at 562-63 (denying equitable relief). It is also an open question whether North Dakota would require a showing of both procedural and substantive uncon-scionability in this context. See, e.g., Rutherford v. BNSF Ry. Co., 765 N.W.2d 705, 713-15 (N.D.2009) (requiring a showing of both procedural and substantive unconscionability at the time the lease was entered). Because we find the lease is not substantively unconscionable, we need not consider whether it is procedurally unconscionable.